UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 2:15-cr-155** |
| **v.** | ) | **Hon. William H. Walls** |
| | ) | |
| **ROBERT MENENDEZ and** | ) | |
| **SALOMON MELGEN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

UNITED STATES' OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER VENUE

Defendant Robert Menendez, a United States Senator representing the State of New Jersey, has filed a motion to move his federal corruption trial away from the State of New Jersey, where a grand jury returned a properly venued indictment. At the April 22 status conference, counsel for defendant Menendez said, "I am not sure of the correct venue for this case. It may very well be Newark, but it very well may not be Newark," noting that "this case began as an investigation that was presented in South Florida." Apr. 22, 2015, Tr. at 14. Defendant Menendez has now decided that the correct venue is neither New Jersey nor South Florida, but rather Washington, D.C. Defendant Menendez's results-oriented analysis of the *Platt* factors misreads the indictment and mischaracterizes key facts critical to his motion. Specifically, defendant Menendez ignores the indictment's allegations that he accepted numerous things of value in New Jersey; he represents to this Court that his attorneys are based in Washington, D.C., when the law firm web site for his attorneys publicly represents that they are in fact based in New York at an address less than 15 miles from the federal courthouse in Newark; and he double-counts some Washington, D.C.-based witnesses while omitting from his analysis some New Jersey-based witnesses. Defendant Menendez further distorts the *Platt* analysis by asserting that the New Jersey-based witnesses

would be equally available in Washington, D.C., *see* Mot. at 8, 8 n.5, 10, & Ex. 5, n.4, while suggesting that the Washington, D.C.-based witnesses would not be equally available in New Jersey, *see, e.g.*, Mot. at 13.  Although he resides in South Florida, co-defendant Salomon Melgen has joined the motion.

This indictment was properly returned in the District of New Jersey—where venue is proper for every count in the indictment, and there are no interests of justice weighing in favor of transferring this case to Washington, D.C—where venue is improper for a majority of the counts in the indictment.  Thus, this Court should deny the defendants' motion.

## I.   RULE 21(b) AUTHORIZES DISCRETIONARY, RATHER THAN MANDATORY, TRANSFER OF VENUE.

The defendants have moved for a transfer of venue pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure.  Rule 21(b) permits district courts to transfer trials to another district "for the convenience of the parties, any victim, and the witnesses, and in the interest of justice."  Fed. R. Crim. P. 21(b).  "The burden is on the defendant to show that transfer would serve the purpose specified in the Rule . . . ."  *United States v. Coffee*, 113 F. Supp. 2d 751, 753 (E.D. Pa. 2000).  In *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964), the Supreme Court endorsed ten factors that courts should weigh to determine whether a defendant's motion to transfer venue pursuant to Rule 21(b) should be granted.  Specifically, those factors are the following: (1) the location of the defendant, (2) the location of the witnesses, (3) the location of events likely to be at issue, (4) the location of documents and records likely to be involved, (5) the disruption of the defendant's business, (6) the expense to the parties, (7) the location of counsel, (8) the relative accessibility of the place of trial, (9) the docket conditions of each district, and (10) any other special elements that might affect the transfer.  *Id.* at 243-44.  These factors may not all weigh in favor of a single district, and no single factor is inherently more important than the others.

Accordingly, courts must balance the factors and exercise discretion in determining how much weight to give each individual factor. *Coffee*, 113 F. Supp. 2d at 754 ("It is incumbent on the court in such a case to strike a balance and decide which factors seem to be of greatest importance in a case."). Importantly, the rule vests complete discretion with the district court and, unlike Rule 21(a), does not compel a transfer of venue even when the factors may weigh in favor of it. *Compare* Fed. R. Crim. P. 21(b) (using the word "may"), *with* Fed. R. Crim. P. 21(a) (using the word "must").

## II.     THE *PLATT* FACTORS WEIGH IN FAVOR OF KEEPING THIS CASE IN NEW JERSEY.

The indictment charging defendants Menendez and Melgen with bribery and corruption was properly returned by a grand jury empaneled in the District of New Jersey, and every count is properly venued in that district. A majority of the counts are not properly venued in Washington, D.C., and Rule 21(b) is not a vehicle to forum shop. As discussed below, the *Platt* factors weigh strongly in favor of keeping this corruption case involving a New Jersey Senator in the District of New Jersey. Therefore, this Court should deny the defendants' motion to transfer venue.

### a. Defendant Robert Menendez is a New Jersey Resident.

Although defendant Menendez begrudgingly concedes that he is "still a New Jersey resident," Mot. at 3, and defendant Melgen acknowledges that "his home [is] in Florida," the defendants assert that their residences actually weigh in favor of transferring this case to Washington, D.C. Defendant Menendez must concede his residency in the State of New Jersey because if he were not a resident he would be barred by the Constitution from representing the State of New Jersey in the United States Senate. *See* U.S. Const. art. I, § 3, cl. 3 ("No Person shall be a Senator . . . who shall not, when elected, be an Inhabitant of that State for which he shall be chosen."). Therefore, this factor can only weigh in favor of keeping this trial in the District of

3

New Jersey, where the indictment was properly returned.  *See United States v. Negron*, Crim. No. 08-501, 2008 WL 5272056, at *3 (D.N.J Dec 16, 2008) (Walls, J.) ("Although a defendant does not have right to be tried in his or her home district, within the *Platt* analysis defendant's residence deserves 'real weight.'") (internal citations omitted).

The defendants argue that defendant Melgen's residence in Florida weighs in favor of transferring this case to Washington, D.C., since "his home in Florida is closer to Washington, D.C. than New Jersey and he has traveled to Washington, D.C. occasionally for business and political events." Mot. at 5.  There are a number of cities with federal courthouses closer to Florida than New Jersey, but that does not make them appropriate venues for the purpose of Rule 21(b). Moreover, New Jersey is just as accessible to Florida as it is Washington, D.C., and a non-stop flight from West Palm Beach—defendant Melgen's closest airport—to Newark is only 25 minutes longer than a non-stop flight to Washington, D.C.  Finally, while defendant Melgen has on occasion traveled to Washington, D.C., for business and political events, his plane has traveled to New Jersey on numerous occasions to transport defendant Menendez for personal events.

### b. The Likely Witnesses are All Over the World, and Their Locations Do Not Weigh in Favor of Any Particular District.

The defendants assert that because a plurality of the individuals interviewed as part of this investigation and subpoenaed to testify before the grand jury are from Washington, D.C., the location of possible witnesses weighs in favor of transferring the case to Washington, D.C.  The defendants, however, mistakenly assume that every witness interviewed or subpoenaed before the grand jury will be a witness at trial, and inaccurately predict the likely witness list with a disproportionate representation from Washington, D.C.  Defendant Menendez's analysis on this topic has been rapidly evolving, as his counsel recently proclaimed to the Associated Press that "[t]here may be no witnesses in New Jersey—zero," David Porter, *Menendez lawyer could seek*

4

*venue change for corruption trial*, Associated Press, April 22, 2015, *available at* http://www.usnews.com/news/politics/articles/2015/04/22/lawyers-for-menendez-donor-due-in-court-in-corruption-case, while he now concedes in his motion that there may be as many as 16 New Jersey-based witnesses, *see* Mot. at 6; *see also* Mot. at 6-8 (describing New Jersey-based witnesses). And in a matter of weeks his calculation of South Florida witnesses has changed just as drastically, declaring to the media on April 22 that "[t]here's going to be a whole lot of witnesses in South Florida," Porter, *supra*, while representing in his May 11 motion that there are in fact only four witnesses in South Florida, three of whom are defendant Melgen's relatives, *see* Mot., Exs. 1-5.

The likely witnesses in this case are located all over the world, including New Jersey, Washington, D.C., Florida, the Midwest, the west coast, the Caribbean, Central America, and Europe. Unlike many of the cases relied on by the defendants, this is not the type of case where the majority of witnesses are located in one district and the trial is located in another. No matter where this case is tried, witnesses will be required to travel. Newark is a large metropolitan city with major arteries of the interstate highway system, a train station, and an international airport with non-stop flights to and from the cities where the likely witnesses in this case are located. There is no doubt that this trial will involve witnesses who are based in Washington, D.C., but unlike the cases transferring venue relied on by the defendants, there is not a great distance between New Jersey and Washington, D.C. And a cursory review of the Amtrak and United shuttle schedule reveals that there are more than 40 opportunities each day to make the short trip.

Moreover, a close examination of the five exhibits provided by the defendants identifying likely witnesses and their locations reveals that they have double-counted some of the possible Washington, D.C.-based witnesses, *see, e.g.*, Ex. 1, line 15 & Ex. 4, line 1, and not counted some

New Jersey-based witnesses at all.  Indeed, at least one likely witness based in New Jersey—a witness referenced in the indictment, no less—is omitted entirely.  *See* Indictment at ¶¶ 29, 30 & 33.

Finally, the defendants are internally inconsistent when they assert that the New Jersey-based witnesses would be equally available in Washington, D.C., *see* Mot. at 8, 8 n.5, 10, & Ex. 5, n.4, while suggesting that the Washington, D.C.-based witnesses would not be equally available in New Jersey, *see* Mot. at 13, 15-16.  This inconsistent position is especially misleading with regards to defendant Menendez's staffers.  *See* Mot. at 10 ("Only one person from New Jersey ('Staffer 7') was involved in any of this conduct, and this staff member can easily travel to Washington, D.C. and work from the Senator's D.C. office if called to testify at trial.").  If defendant Menendez's New Jersey staffers are permitted to work out of his Washington, D.C., office for a Washington, D.C., trial, it is unclear why defendant Menendez's New Jersey offices would shut its doors to his Washington, D.C., staffers for a New Jersey trial, particularly when his Newark office is located just over a half mile from the federal courthouse where his trial is scheduled to take place.

In sum, the likely witnesses in this case are located in many cities, including Newark, and this factor does not favor Washington, D.C., over New Jersey.

### c.  A New Jersey Jury will have More Familiarity with the Location of the Events at Issue than a Jury in Washington, D.C.

The defendants argue that the location of the events at issue weighs in favor of transferring this case to Washington, D.C.  *See* Mot. at 8-12.  In their analysis, the defendants focus disproportionately on the *quo*, ignoring the *quid* that is alleged to have influenced the *quo* and that serves as the predicate for each substantive offense, all of which have a New Jersey nexus.  The defendants dismiss the *quid's* nexus to New Jersey by averring that while many of the flights may

have originated or ended in New Jersey, the purpose of the flights was to transport defendant Menendez away from New Jersey. *See* Mot. at 11 ("[T]he alleged purpose of the various flights was to transport Senator Menendez to the Dominican Republic (often via stops or connections outside of New Jersey, some of which were also in Washington, D.C.)"). That, however, is precisely the point. The fact that defendant Melgen used his private jet to transport defendant Menendez to and from New Jersey reinforces why this case is properly venued here, and why the free trips on defendant Melgen's private jet were so valuable. Defendant Menendez received the gifts in New Jersey and used them to enjoy Caribbean vacations away from his home. New Jersey does not lose venue merely because defendant Menendez chooses to vacation in the Caribbean.

Moreover, the majority of official acts that the defendants rely on to tip the scales towards Washington, D.C., occurred over email. In fact, of the 120 overt acts the defendants identify as having occurred in Washington, D.C., approximately 94 occurred over email. *Compare* Mot. at 9-11, *with* Indictment at ¶¶ 148-55, 157-65, 173-75, 177, 180-84, 207-08, 166-69, 185-88, 193-96, 198-204, 209-20, 117-31, 132-42, 74-77, 88-89, 95-98, 100-04, 110, 99, 111-13, 47-53, 25, & 36 (paragraphs listed in the same order as they are listed in defendants' motion). Moreover, paragraphs that the defendants assert describe conduct in Washington, D.C., actually occurred elsewhere. *Compare* Mot. at 9-11, *with* Indictment at ¶ 52 (describing conduct in Florida, not Washington, D.C.), ¶ 112 (describing conduct in Spain, not Washington, D.C.), ¶ 113 (describing conduct in Miami, not Washington, D.C.), ¶ 122 (describing conduct in the Dominican Republic, not Washington, D.C.). In addition, some of the paragraphs the defendants assert to describe conduct outside of New Jersey clearly have a sufficient New Jersey nexus for purposes of Rule 21(b). *Compare* Mot. at 11, *with* Indictment at ¶¶ 50, 53 (describing campaign contributions defendant Melgen made to entities in New Jersey).

The significance of the fact that a majority of the overt acts relied on by the defendants in their motion took place over email is that these acts do nothing to advance the "location of the events" factor in a venue analysis. That an email may have been sent from or received in Washington, D.C., creates nothing unique to the location of Washington, D.C., that favors transferring a trial to that district in the interests of justice. In fact, applying the defendants' own analysis from their "location of documents and records" discussion to the factual premise underlying their argument here, the location of the events they rely on are a non-issue for purposes of a Rule 21(b) analysis. *See* Mot. at 12 ("In today's world of electronic media, the location of relevant documents and records is a neutral factor."). While some official acts certainly occurred in Washington, D.C., the power to take those official acts is derived from the people of New Jersey, and the indictment alleges that defendant Menendez's official acts were influenced by things of value he accepted in New Jersey. That is the crux of the crime.

Finally, to the extent that this factor has any significance in a case like this, the location of the events should be weighted towards a jury that has geographic familiarity with the evidence that will be presented at trial. This case will involve substantive references to Union County, Passaic County, Camden County, Essex County, and Teterboro—places that a Washington, D.C., jury may not recognize as located in New Jersey, but locations that a New Jersey jury will immediately recognize. Familiarity with these locations and the recognition that they are located in New Jersey has relevance that advances this factor towards the District of New Jersey for purposes of Rule 21(b).

Thus, this factor weighs in favor of keeping the case in New Jersey.

### d.  The Location of Documents and Records is Not an Issue in this Case.

The Government agrees that this factor is not an issue in this case.

     **e. The Federal Government Will Continue to Function if the Defendants are Tried in New Jersey.**

The defendants assert that if this case is tried in New Jersey instead of Washington, D.C., defendant Menendez would not be able to perform his job as a Senator representing the State of New Jersey. *See* Mot. at 13. The defendants here are taking the categorical position that when Members of Congress are indicted, they can only be tried in Washington, D.C. Members of Congress have been indicted in the past, and they have been tried in places other than Washington, D.C., without the "severe" disruption predicted by defendant Menendez. *See, e.g.*, *United States v. Traficant*, Crim. No. 01-207 (D. Ohio) (sitting Congressman tried and convicted in Ohio of corruption charges); *United States v. Biaggi*, Crim. No. 87-265 (S.D.N.Y.) (sitting Congressman tried and convicted in five-month trial in New York of corruption charges); *United States v. Williams*, Crim. No. 80-575 (E.D.N.Y.) (sitting U.S. Senator from New Jersey tried and convicted in New York of corruption charges); *United States v. McDade*, Crim. No. 92-249 (E.D. Pa) (sitting Congressman tried on corruption charges in Pennsylvania); *see also United States v. Grimm*, No. 14-248 (E.D.N.Y) (sitting Congressman pleaded guilty to tax fraud shortly before trial in New York); *United States v. Jefferson*, Crim. No. 07-209 (E.D. Va) (sitting Congressman indicted on corruption charges in Virginia and remained in office over 18 months post-indictment). Indeed, it is absurd to suggest that a Senator from New Jersey cannot perform his job as a Senator while physically present in the State of New Jersey, and the United States Senate will continue to function if the defendants are tried in New Jersey instead of Washington, D.C. This is another example of defendant Menendez asking this Court for special treatment because of his status as a United States Senator, just as when he asked that this Court not take the routine measure of ordering him to surrender his personal passport:

    Mr. Lowell:    But he's not every other defendant. Not in –

| | |
|---|---|
| The Court: | He should be treated as every defendant. |
| Mr. Lowell: | But he can't be. |
| The Court: | Why can't he? |
| . . . | |
| Mr. Lowell: | So it's not giving him favorable treatment, it's just recognizing the reality. |

Apr. 2, 2015, Tr. at 19-20.  A criminal trial will be disruptive to a defendant's life and business, and that disruption must be tolerated if our criminal justice system is going to function properly. *See Jones v. Gasch*, 404 F.2d 1231, 1241 (D.C. Cir. 1967) ("[I]t is obvious that some amount of inconvenience—to Government or to [the defendant], and perhaps to both—will inevitably accompany [the defendant's] trial . . . .").

Defendant Menendez can still perform his duties as a Senator representing his home state of New Jersey if he is physically present in New Jersey.  Therefore, this factor does not weigh in favor of transferring the case to Washington, D.C.

**f.   The Expense to the Parties Does Not Favor Transferring Venue.**

The defendants aver that the expense to the parties "weighs heavily in favor of transfer to Washington, D.C."  Mot. at 14.  The defendants rely on two assertions in support of this argument. First, they again predict that "the vast majority of witnesses likely to be called by either the government or the defense work or reside in Washington, D.C."  Mot. at 14.  As discussed above, this assertion is not accurate.  Furthermore, the defendants are double-counting the "location of the witnesses" factor by repeating it again here.  Finally, witness travel is irrelevant to this factor because the defendants have conceded in their motion that this is not the type of case where they will be prejudiced by incurring burdensome costs for witness travel if the case is held in New

10

Jersey instead of Washington, D.C.  *See* Mot. at 6 n.3 ("[D]efendants anticipate that much of the testimony that they will rely upon as part of the defense will be elicited from government employees called as witnesses by the government.").

Second, the defendants assert that counsel for the Government and defendant Menendez are based in Washington, D.C., requiring travel and associated costs if the trial is held in Newark. As discussed below, this is also not accurate.  Moreover, the Government's team includes FBI agents based in the Newark area, requiring travel and associated costs if the trial is held in Washington, D.C.  Therefore, the Government will incur costs whether this trial is held in New Jersey or Washington, D.C.

Thus, this factor does not favor one district over another, and at any rate this factor has nominal value compared to the more significant interests of justice addressed in the other *Platt* factors.

### g.  The Location of Counsel Does Not Favor Transferring Venue.

The defendants acknowledge that defendant Melgen's attorneys[1] are based in Florida, *see* Mot. at 14, but represent that "Senator Menendez's attorneys are based in D.C.," Mot. at 3; *see also* Mot. at 14 ("All of Senator Menendez's counsel work or reside in Washington, D.C.").  Only two attorneys have appeared in court on behalf of defendant Menendez—the same two attorneys who are the only attorneys to have signed this motion on behalf of defendant Menendez.  The law firm web site for those two attorneys represents that one attorney is based exclusively "in the firm's New York office," Jenny Kramer, CHADBOURNE, http://www.chadbourne.com/jkramer/ (last visited May 26, 2015), while the other attorney is based in Washington, D.C., *and* New York,

---

[1] We understand that after the defendants filed their motion to transfer venue, defendant Melgen substituted his counsel with attorneys based in Miami and Washington, D.C.

Abbe David Lowell, CHADBOURNE, http://www.chadbourne.com/alowell/ (last visited May 26, 2015). Indeed, at the April 2, 2015, arraignment, counsel for defendant Menendez acknowledged that he splits his time between Washington, D.C., and New York:

> The Court:     Aren't some of you coming from Washington?
>
> Mr. Lowell:    Well, counsel for Dr. Melgen are actually I believe in part coming from Florida. And so -- and I will be in between New York and Washington.

Apr. 2, 2015, Tr. at 10. Notably, defendant Menendez's attorneys' New York office is located less than fifteen miles from the federal courthouse in Newark where defendant Menendez is scheduled to be tried.

The prosecutors on this case are based in Washington, D.C., but routinely prosecute cases where they are properly venued, even if that requires travel. Thus, this factor does not favor one district over another, and has nominal value compared to the more substantive factors discussed above and below.

### h.  The Relative Accessibility of the Place of Trial is Not an Issue in this Case.

The Government agrees that this factor is not an issue in this case.

### i.  This Court's Docket Favors Keeping the Case in New Jersey.

The defendants assert that the docket conditions of each district is a neutral factor. Mot. at 15. The defendants' conclusion, however, ignores this Court's ability and willingness to prioritize this case over all others:

> No, this is one benefit you have in my status as a Senior Judge, is that I am not beset by other matters that would trump priority for you for this case. And so consequently, there's nothing on my calendar now that would up-stage you, as far as going to trial. And that's why I would at this time – at this time give you a trial date to work for – toward, rather, which would be October 6th.

Apr. 22, 2015, Tr. at 27.  Indeed, this Court has already set a trial date in October and a briefing schedule that begins next month, all of which will have to be vacated and delayed if the case is transferred to another district.

The defendants attempt to neutralize this factor by asserting that "to the extent that docket conditions differ between districts, both defendants have indicated a willingness to waive any requests for speedy trial . . . ."  Mot. at 15.  The defendants, however, cannot neutralize this factor by eliminating it, particularly since the Speedy Trial Act confers a statutory right on the public as well as the defendants.  *See Zedner v. United States*, 547 U.S. 489, 501 (2006) (rejecting proposition that a defendant can prospectively waive his Speedy Trial Act rights, in part, because "the Act was designed not just to benefit defendants but also to serve the public interest").

Thus, this factor weighs in favor of keeping the case in New Jersey.

**j.  The Other Special Elements Relied on by the Defendants Do Not Support Transfer to Washington, D.C.**

The defendants identify three additional factors that they assert weigh in favor of transferring this case to Washington, D.C.  First, they aver that a trial in New Jersey would disrupt the work of the legislative and executive branches of the federal government.  Mot. at 15-16.  Specifically, they argue that because officials in the legislative and executive branches will be called as witnesses, a trial held in New Jersey "threatens to disrupt the operation of the executive and legislative branches, at a time when the Congress and these agencies have important work before them."  Mot. at 15.

The United States government will continue to function if Robert Menendez and Salomon Melgen are tried in New Jersey instead of Washington, D.C.  High-level officials take vacations, Congress goes on recess, staffers occasionally call in sick, and yet the government continues to function.  Moreover, the defendants' assertion that a public corruption trial in New Jersey threatens

13

to disrupt government resources in Washington, D.C., demonstrates a lack of seriousness regarding the charges in this case.  This indictment describes a pattern of expensive gifts corruptly influencing the allocation of government resources, and the case charges an egregious abuse of public office that threatens the integrity of our federal government.  The integrity and efficiency of our government will be improved by the prompt trial of this case, not diminished by it.

Second, the defendants aver that "pervasive pre-trial publicity in New Jersey is another factor weighing in favor of transfer to Washington, D.C."  Mot. at 16.  This case, however, has generated pretrial publicity in Washington, D.C., as well as New Jersey, and the media is not going to lose interest if the case is transferred to another district.

Moreover, defendant Menendez cannot credibly complain about pretrial publicity when he has been deliberately generating so much of it.  Defendant Menendez held a post-indictment political rally, delivered a press conference on the courthouse steps, issued extrajudicial statements through his Senate office, and created a website designed to publicize statements favorable to his defense, generate information favorable to his defense, and raise money for his defense.  The web site even has an "In the News" section that promotes some of the pretrial publicity that defendant Menendez relies on as the basis for his argument here.  Defendant Menendez's attorney published a letter in the New York Times addressing the charges against his client, and his Senate office issued an extrajudicial statement supplementing his motion to transfer venue.  In sum, defendant Menendez is creating and compounding the factor he relies on in support of his motion to transfer venue.

Finally, to the extent that defendant Menendez claims he has suffered prejudice from "pervasive pre-trial publicity" in New Jersey, this is an insufficient basis to transfer venue.  *See Skilling v. United States*, 561 U.S. 358, 381 (2010) (noting that "pretrial publicity—even pervasive,

14

adverse publicity—does not inevitably lead to an unfair trial" requiring a venue change); *see also In re Tsarnaev*, 780 F.3d 14, 21 (1st Cir. 2015) (rejecting defendant's request in Boston Marathon bombing trial for writ of mandamus to transfer case outside jurisdiction of crime based on pretrial publicity, noting that "any high-profile case will receive significant media attention"). In any event, pretrial publicity is not a proper consideration for transfer under Rule 21(b), which authorizes courts to transfer venue "for convenience." *See Negron*, 2008 WL 5272056 at *2 (Walls, J.) ("In contrast to Rule 21(a), which guarantees the defendants right to a fair trial, Rule 21(b) addresses the convenience of trial."); *Jones*, 404 F.2d at 1235 (D.C. Cir. 1967) (noting that "the claim of prejudice was not eligible for consideration under Rule 21(b)"). Put simply, the Department of Justice is more confident than Senator Menendez that a New Jersey jury will objectively consider the evidence and faithfully follow the Court's instructions.

The defendants aver in a footnote that an additional special element meriting transfer of this case to Washington, D.C., is that they are charged with depriving the citizens of New Jersey of their right to the honest services of defendant Menendez, thus making potential jurors the victims of the defendants' criminal activity. *See* Mot. at 16 n.9. Honest services fraud is a well-established corruption statute with clear application here, and the defendants' categorical position that a defendant cannot be tried in a district that includes the people whom he deprived of his honest services has no legal support and ignores the rich history of cases to the contrary. *See, e.g.*, *United States v. Mariano*, 316 F. App'x 99 (3d Cir. 2008) (affirming conviction of Philadelphia City Council member tried in the Eastern District of Pennsylvania for depriving the City of Philadelphia and its citizens of their right to his honest services); *United States v. Bryant*, 655 F.3d 232 (3d Cir. 2011) (affirming conviction of New Jersey state senator tried in the District of New Jersey for depriving the State of New Jersey and its citizens of their right to his honest services).

As noted above, to the extent the defendants are arguing for a transfer of venue based on alleged prejudice, they have chosen the wrong procedural vehicle for doing so.

### III.    CONCLUSION

Robert Menendez, a United States Senator elected to represent the people of New Jersey, has filed a motion seeking to avoid being tried by a jury of his peers in the State of New Jersey. The Court should not permit this. The defendants were indicted for bribery and corruption in the District of New Jersey by a grand jury empaneled in that district, and every count is properly venued there. An objective analysis of the *Platt* factors and a complete review of the indictment strongly support keeping the case in New Jersey. Under the facts and circumstances of this case, Rule 21(b) does not provide the defendants with the relief they seek.

Accordingly, the Government respectfully requests that this Court deny the defendants' motion to transfer the case to Washington, D.C.

Respectfully submitted this 26th day of May, 2015.

RAYMOND HULSER
CHIEF, PUBLIC INTEGRITY SECTION


By:     s/ Peter Koski
        Peter Koski
        Deputy Chief
        J.P. Cooney
        Deputy Chief
        Monique Abrishami
        Trial Attorney
        Public Integrity Section
        1400 New York Ave. NW
        Washington, D.C. 20005
        Telephone:  (202) 514-1412
        Facsimile:  (202) 514-3003

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.


Dated: May 26, 2015                    s/ Peter Koski
                                       Peter Koski
                                       Deputy Chief
                                       J.P. Cooney
                                       Deputy Chief
                                       Monique T. Abrishami
                                       Trial Attorney
                                       Public Integrity Section
                                       Criminal Division
                                       U.S. Department of Justice

17