# EXHIBIT 2

## AFFIDAVIT OF GREGORY J. SHEEHY

I, GREGORY J. SHEEHY, do hereby swear or affirm:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI). I have been a Special Agent since 1997. I am currently assigned to a public corruption squad in the Newark Division. I have participated in and led numerous criminal investigations of white collar and corruption offenses, including mail fraud, wire fraud, bribery, false statements, and conspiracy. I have also participated in and led numerous investigations of government officials and been the affiant on several arrest and search warrants. I am the lead case agent for the investigation resulting in the indictment in *United States v. Robert Menendez & Salomon Melgen*, Crim. No. 15-155, in the United States District Court in the District of New Jersey.

2. In or about December of 2012, the Newark Division, along with the Department of Justice's Public Integrity Section, began investigating a bribery scheme involving Dr. Salomon Melgen of West Palm Beach, Florida, and Senator Robert Menendez of New Jersey. I am aware that when the Newark investigation began, the FBI's Miami Division, along with the Department of Justice's Child Exploitation and Obscenity Section and the U.S. Attorney's Office in Miami, was investigating allegations that Dr. Melgen and Senator Menendez traveled to the Dominican Republic to have sex with underage prostitutes.

3. At some point after we began the bribery investigation, I became aware that agents in the Miami Division's West Palm Beach Resident Agency were investigating Dr. Melgen for health care fraud.

4. On January 28, 2013, I traveled from Newark to West Palm Beach to conduct investigative activities, including attempting to interview Dr. Melgen. An attempt was made to interview Dr. Melgen at his office, the Melgen Vitreo Retinal Eye Center (VREC), that evening.

He declined. The next morning, January 29, I spoke on the phone with Dr. Melgen's attorney, Dean Wilbur. Mr. Wilbur informed me that Dr. Melgen did not want to speak with the FBI about the publicly reported allegations against him and Senator Menendez.

5. I was in Fort Lauderdale on January 29, 2013, working on the investigation. I intended to drive from there to Tampa Bay on January 30 to conduct witness interviews.

6. Early in the morning of January 30, 2013, I received a phone call from my supervisory special agent while I was still at my hotel in Fort Lauderdale. My supervisor told me that the media was reporting that FBI agents in West Palm Beach had executed a search warrant at VREC late the night before. Neither my supervisor nor I had any advance knowledge that VREC was going to be searched that night. The information came as a surprise to both of us.

7. After this phone call, my supervisor was able to confirm that FBI agents working on the health care fraud investigation had executed a search warrant at VREC and were still present there. My supervisor informed me that the health care fraud agents may have found material related to our bribery investigation. I therefore cancelled my plans to go to Tampa Bay and instead drove to VREC.

8. When I arrived at VREC, there were several media trucks parked out front. An agent or agents on the search team at VREC showed me a copy of a $58,500 check from Senator Menendez, a deposit slip, a letter to Dr. Melgen from Senator Menendez's attorneys about the check, an email from Eduardo Rodriguez to Senator Menendez listing flights and their costs, flight records, and a handful of other documents. I was told that health care fraud agents also found professional photographs of young women and a black notebook that looked to them to be a prostitution ledger.

GJS

9. I spoke with a prosecutor in the Public Integrity Section, who advised me that, in an abundance of caution, the material should be separated in a box, sealed, and that a new warrant should be obtained. I communicated that information to the Assistant Special Agent in Charge (ASAC) of the Miami Division, Timothy P. Donovan.

10. Sometime thereafter, ASAC Donovan informed me that he had spoken with Mr. Wilbur, Dr. Melgen's attorney, and that Mr. Wilbur had consented to the FBI removing the material from VREC. ASAC Donovan instructed me to email Mr. Wilbur a copy of the new warrant after it was approved.

11. Before leaving VREC, agents who had conducted the search put the material they believed had relevance to the bribery and underage prostitution allegations in a box. The box was then sealed. I took custody of the box and removed it from VREC.

12. After I left VREC, on January 30 and 31, 2013, I worked with prosecutors on the affidavit in support of a warrant to search and seize the material found at VREC. On January 31, I presented the affidavit to Magistrate Judge James M. Hopkins, who signed a warrant. I did not unseal and open the box until after Judge Hopkins signed the warrant.

13. On February 1, 2013, I emailed Mr. Wilbur a signed copy of the new search warrant.

14. I am not aware of the FBI having ever received a request from Dr. Melgen or his representatives to return the contents of the box I removed from VREC on January 29, 2013.

By my signature, under penalty of perjury, I hereby swear or affirm that the above statement is true and correct to the best of my recollection.

DATE: 8/21/2015

GREGORY J. SHEEHY
SPECIAL AGENT, FBI

GJS