# EXHIBIT 3

## AFFIDAVIT OF TIMOTHY P. DONOVAN

I, TIMOTHY P. DONOVAN, do hereby swear or affirm:

1. I am a Section Chief with the Federal Bureau of Investigation (FBI). I have worked for the FBI since 1991, including working in various supervisory positions since 2002. I am currently stationed at FBI Headquarters in Washington, D.C., where I serve as the Section Chief for FBI Recruiting, a role I assumed in 2014. From 2008 until assuming my current position, I served as the Assistant Special Agent in Charge (ASAC) of the Miami Field Division, which encompassed Sebastian through Key West, Florida, including Miami and West Palm Beach. Immediately prior to that, I was a Supervisory Special Agent supervising the Miami Medicare Fraud Strike Force.

2. I have participated in, led, and supervised numerous criminal investigations of white collar offenses, including health care fraud, mail fraud, and wire fraud. I have also investigated child exploitation cases. I have participated in search warrants of homes and businesses, serving in varying roles, including as a member of the search team, the leader of a search site, and the affiant in support of probable cause.

3. On January 29-30, 2013, I supervised the execution of a search warrant at the Vitreo Retinal Eye Center ("VREC") in West Palm Beach, Florida. The warrant was executed as part of a health care fraud investigation of VREC and its owner, Dr. Salomon Melgen. Our investigative team was based in the West Palm Beach Resident Agency and worked with investigators from the U.S. Department of Health and Human Services Office of Inspector General and prosecutors from the U.S. Attorney's Office for the Southern District of Florida, West Palm Beach Division. I was present at VREC at the beginning of the search at approximately 10:00 p.m. on January 29. I

remained at VREC until approximately 1:00 a.m. on January 30. I returned sometime later that morning and remained until the search was complete around 4:00 p.m. on January 30.

4.     The health care fraud investigative team began preparations for obtaining a search warrant for VREC before January 29, 2013, with the plan of executing it at some point after that date. However, on January 29, the FBI's Mobile Surveillance Team, which was assisting in preparations for the warrant, observed a shredding truck from the company Cintas parked outside. Agents interviewed representatives of Cintas and learned that VREC had entered into a shredding service contract with the company in December of 2012. According to the Cintas representatives, the contract called for the company to provide shredding services to VREC about once a month, and the January 29 shredding was performed in the regular course of the contract. Knowing that VREC documents were subject to routine shredding, a decision was made to seek a search warrant immediately.

5.     Separate from the health care fraud investigation that lead to the search warrant, I was aware that FBI agents from Newark, New Jersey, were investigating allegations that Dr. Melgen and Senator Robert Menendez of New Jersey were involved in a public corruption scheme. I was also aware that agents in my office were investigating whether Dr. Melgen and Senator Menendez traveled to the Dominican Republic to have sex with underage prostitutes. The allegations of corruption and underage prostitution were widely reported by the media in South Florida. Before we executed the search warrant at VREC, I discussed these allegations with prosecutors and with the search team. I was aware that if the search team came across evidence relating to these allegations while searching VREC for evidence of health care fraud, it might be necessary or prudent to get a new warrant to seize that evidence.



6.  When we arrived at VREC to execute the search warrant on January 29, 2013, Dr. Melgen, Eduardo Rodriguez, and a masseuse were present. Dr. Melgen was receiving a massage. An agent instructed Dr. Melgen to get dressed and informed him that he and the others would need to leave the building. Soon thereafter, Dr. Melgen's attorney, Dean Wilbur, came to VREC. I met with Mr. Wilbur outside VREC for several minutes. I gave Mr. Wilbur my card so that he could contact me if necessary. Mr. Wilbur told me that he hoped the search could be completed as quickly as possible so that staff and patients would be able to access VREC the next day. Mr. Wilbur was polite and cooperative.

7.  Agents went about searching VREC as authorized by the warrant. I was informed that an agent or agents found a check and some miscellaneous documents related to Senator Menendez lying in plain view in a room. I instructed the agents to separate this material from material that related only to health care fraud.

8.  I was also informed that an agent or agents searching Dr. Melgen's office found photographs of young women and a notebook listing names and phone numbers. Agents described the material to me, but I did not personally inspect it. I instructed the agents to separate the material from evidence that related only to health care fraud.

9.  At some point on January 30, 2013, before we finished our search of VREC, Special Agent Gregory Sheehy from Newark arrived on the search site. Agent Sheehy was not part of our search team.

10. It was my view that the warrant we had and the plain view rule allowed us to take all the material that was found. However, in an abundance of caution, I contacted a prosecutor in the U.S. Attorney's Office to discuss what to do with the material possibly related to corruption and prostitution. We decided that it would be prudent to get a new warrant. I was advised to call



Mr. Wilbur to tell him what we intended to do and ask for his consent to remove the material from VREC while we got a new warrant, rather than secure it in place.

11. I called Mr. Wilbur from VREC on January 30, 2013, before the search ended. I told Mr. Wilbur that we had found things related to the widely reported allegations against Dr. Melgen and Senator Menendez. I told him that we intended to put that material in a box and obtain a new warrant for it. I asked Mr. Wilbur for Dr. Melgen's consent to remove the box from VREC while we obtained a new warrant, rather than secure it in place. Mr. Wilbur agreed without hesitation or reservation. He asked that he be provided a copy of the warrant via email after it was obtained. I thanked Mr. Wilbur for his cooperation and agreed to have an agent email him the new warrant. Mr. Wilbur reiterated his hope that the search would be completed as soon as possible and that the FBI would vacate the premises so that VREC could function normally. Mr. Wilbur was polite and cooperative.

12. I instructed agents on the search team to put the materials related to corruption and prostitution in a box, which they did. Agent Sheehy then took custody of the box and removed it from VREC.

By my signature, under penalty of perjury, I hereby swear or affirm that the above statement is true and correct to the best of my recollection.

DATE: 8/21/2015

TIMOTHY P. DONOVAN
SECTION CHIEF, FBI

4