FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

ROBERT MENENDEZ and
SALOMON MELGEN,

Defendants.

**OPINION**
Cr. No. 15-155

**Walls, Senior District Judge**

Before the Court are five motions by Defendants Robert Menendez and Salomon Melgen to dismiss the indictment in this criminal action. Defendants challenge Counts One through Twenty-One of the indictment for failure to allege an "official act" within the meaning of the bribery statute, 18 U.S.C. § 201. Motion to Dismiss 10, ECF No. 57. They also move to dismiss each Count in the indictment for lack of specificity under the Fifth and Sixth Amendments. Motion to Dismiss 7, ECF No. 54. In their eleventh motion to dismiss, Defendants challenge the conspiracy charge in Count One on several unrelated grounds. Motion to Dismiss 11, ECF No. 58. In their twelfth motion, they challenge Count Two and Counts Nineteen through Twenty-One on several grounds. Motion to Dismiss 12, ECF No. 59. Finally, in their fourteenth motion, Defendants contend that the honest services fraud offenses alleged in Counts Nineteen through Twenty-One are multiplicitous with certain bribery charges and move for the Court to order the prosecution to elect to dismiss any multiplicitous Counts. Motion to Dismiss 14, ECF No. 61. Each of these arguments is addressed here except for Defendants' specificity arguments related to Count Twenty-Two, which are addressed in a separate opinion alongside Defendant

1

FOR PUBLICATION

Menendez's motion to dismiss that count. Decided after oral argument on September 17, 2015, Defendants' motions are denied.

The procedural and factual background of this case has been discussed at length in the Court's opinion on Defendants' Speech or Debate Clause motions, ECF No. 117, and need not be repeated here.

## DISCUSSION

### 1. The indictment adequately alleges official acts within the meaning of § 201.

In their tenth motion to dismiss, Defendants argue that the acts allegedly taken by Senator Menendez on behalf of Dr. Melgen "do not constitute 'official acts' within the meaning of the bribery statute." Mot. to Dismiss 10 at 4. The indictment alleges three categories of official acts: (1) Menendez's alleged attempts "to influence the visa proceedings of Melgen's foreign girlfriends," Indict. ¶¶ 70-113, (2) Menendez's advocacy to the State Department and to Customs and Border Protection (CBP) to advance interests that a company owned by Melgen had in the Dominican Republic, *id.* ¶¶ 114-143, and (3) Menendez's advocacy on behalf of Melgen to Executive Branch officials in the departments of Health and Human Services (HHS) and the Centers for Medicare and Medicaid Services (CMS) relating to a Medicare billing dispute. *Id.* ¶¶ 144-227. According to Defendants, decisions or actions on these matters were not within Senator Menendez's control. Mot. to Dismiss 10 at 5.

The term "official act" is defined by the bribery statute and means:

any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

18 U.S.C. § 201(a)(3). In 1914, applying an older but similar version of the bribery statute, the Supreme Court held that official acts could encompass an official's duties that are "clearly

FOR PUBLICATION

established by settled practice" rather than by written rules. *United States v. Birdsall*, 233 U.S. 223, 231 (1914); *see also United States v. Carson*, 464 F.2d 424, 433 (2d Cir. 1972) ("The terms of the written definition of official act have not been altered to any substantial extent since their origin. . . ."). More recently, the Supreme Court explained that officials often take actions that are "assuredly 'official acts' in some sense" but are not official acts as defined by § 201(a)(3), such as a President or Secretary "receiving . . . sports teams at the White House, visiting [a] high school, [or] speaking to . . . farmers about USDA policy." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 407 (1999).

  The D.C. Circuit has reconciled *Birdsall* and *Sun-Diamond* by explaining that *Birdsall* did not hold "that every action within the range of official duties *automatically* satisfies § 201's definition; it merely made clear the coverage of activities performed as a matter of custom." *Valdes v. United States*, 475 F.3d 1319, 1323 (D.C. Cir. 2007) (emphasis in original); *see also United States v. McDonnell*, 792 F.3d 478, 509 (4th Cir. 2015) ("[W]e are satisfied that the reach of § 201(a)(3) is broad enough to encompass the customary and settled practices of an office, but only insofar as a purpose or effect of those practices is to influence a [matter] that may be brought before the government."). In *Valdes*, the D.C. Circuit held that a police officer's "ascertainment of answers to questions" did not amount to a decision or action on an investigation and was not an official act, 475 F.3d at 1326, but the court made clear that its interpretation of § 201 "easily covers," among other examples, "a congressman's use of his office to secure Navy contracts for a . . . firm" because this would "concern inappropriate influence on decisions that the government actually makes." *Id.* at 1325.

  In advancing their argument, Defendants primarily rely on *United States v. Dansker*, a case in which the vice-chairman of the Fort Lee Parking Authority was federally prosecuted

FOR PUBLICATION

under the Travel Act for traveling in interstate commerce with the intent to violate New Jersey

bribery laws. 537 F.2d 40, 44, 46-47 (3d Cir. 1976). The defendant, who was a builder as well as

a public official, did not take action in his official capacity but halted his public advocacy against

a developer seeking zoning variances for a project after receiving a large payment from that

developer. *Id.* at 45. *Dansker* is not controlling because it turned on New Jersey bribery laws,

although the state statute at issue is analogous to § 201 in requiring that a public official

"possess[ ] at least the apparent ability to influence the particular public action involved." *Id.* at

49. The Circuit reversed the defendant's conviction in part because the government:

> failed to produce any evidence whatsoever indicating that he had any ability,
> actual or apparent, to influence official decisions concerning the project in his
> official capacity, or that the alleged bribers believed he could do so by virtue of
> his public office. Indeed, on the record before us, it is not even clear that the
> developers were aware of the fact that [defendant] was the vice-chairman of the
> Fort Lee Parking Authority.

*Id.* at 50.

Senator Menendez's alleged advocacy on behalf of Melgen, which stretched across four

different Executive Branch departments and agencies, Indict. ¶¶ 117, 132, 144, and reached as

high as a cabinet Secretary, *id.* ¶¶ 209-220, in no way resembles the advocacy of a part time city

official in *Dansker* that was done in his capacity "as a private citizen." 537 F.2d at 50. Nor does

it resemble the political gestures and formalities such as visiting a high school that were

described in *Sun-Diamond*. 526 U.S. at 407. A Senator has formal legislative power over matters

of immigration, diplomacy, and healthcare policy, including the power to call hearings and

compel testimony, as Senator Menendez is alleged to have threatened to do during his advocacy

to the State Department. Indict. ¶ 125. These powers are particularly relevant here because

Senator Menendez served on the Committee on Finance, which oversaw HHS and CMS. Mot. to

FOR PUBLICATION

Dismiss 1, ECF No. 48, at 13. He also served as Chairman of the Subcommittee on Western

Hemisphere, Peace Corps, and Narcotics Affairs from 2011 to 2013. *Id.* at 26.

Additionally, under clearly established settled practice, a Senator's non-legislative

advocacy can influence the actions and decisions of Executive Branch officials. *Cf. United States*

*v. Brewster*, 408 U.S. 501, 524 (1972) ("[M]any non-legislative activities are an established and

accepted part of the role of a Member. . . ."). As example, a Menendez staffer is alleged to have

written that two "people from the [Dominican Republic] who wanted visas to visit Dr. [Melgen]

got them. . . . In my view, this is only due to the fact that [Menendez] intervened." Indict. ¶ 106

(emphasis removed).

The official acts allegedly taken by Menendez satisfy 18 U.S.C. § 201(a)(3) and are

consistent with cases in which non-legislative acts by Members of Congress were held to be

official acts under that statute. *See, e.g.*, *United States v. Jefferson*, 674 F.3d 332, 356 (4th Cir.

2012) (Congressman's advocacy to foreign officials on behalf of business ventures after

accepting bribes was an official act.); *United States v. Biaggi*, 853 F.2d 89, 98 (2d Cir. 1988)

(Congressman's advocacy to the Navy on behalf of a dry dock company was an official act.).

Defendants' tenth motion to dismiss is denied.

**2.  The indictment contains sufficient factual orientation.**

In their seventh motion to dismiss, Defendants challenge each Count of the indictment for

a lack of specificity under the Fifth and Sixth Amendments. In a footnote to that motion, they

also state that "as a technical matter," the conspiracy charge is multiplicitous and Counts Two

through Twenty-Two are duplicitous because the charging language of Count One is

incorporated by reference into subsequent counts. Mot. to Dismiss 7 at 10 n.3. Judge Posner

rejected a similar argument in *United States v. Cephus*: "Only if read literally would each count

5

FOR PUBLICATION

be alleging two offenses: conspiracy and a substantive offense. No reasonable person would read them literally. None of them mentions conspiracy. A normal reader would understand each subsequent count's invocation of the first count to mean that the substantive offense alleged . . . in the subsequent count was one of the offenses the defendants had conspired to commit." 684 F.3d 703, 706 (7th Cir. 2012); *see also United States v. Serino*, 835 F.2d 924, 930 (1st Cir. 1987) ("The mere incorporation by reference of a conspiracy count into a substantive count does not constitute multiplicity."). To the extent that Defendants assert this argument as a ground for dismissal, it is denied. The Court will address Defendants' specificity challenge to Count Twenty-Two in a separate opinion, together with the other challenges to that Count brought separately by Senator Menendez in the thirteenth motion to dismiss.

An "indictment is sufficient when it (1) contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) allows him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. John-Baptiste*, 747 F.3d 186, 195 (3d Cir. 2014) (citing *Russell v. United States*, 369 U.S. 749, 763-64 (1962) and *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quotations omitted)). An indictment must allege more than the essential elements of the offense, but "[n]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (internal citations omitted).

"The specificity required for an indictment to have sufficient factual orientation . . . is not particularly onerous." *John-Baptiste* 747 F.3d at 196 (internal quotations omitted). In *Huet*, an indictment charging the defendant with aiding and abetting the possession of a firearm by a convicted felon, 665 F.3d at 592, provided sufficient factual orientation by listing the required

FOR PUBLICATION

elements of the offense, specifying the time period during which the violation occurred, and identifying the specific weapon. *Id.* at 596. In *John-Baptiste*, an indictment charging racketeering extortion among other crimes did not identify the alleged victims, although it "could easily have" done so, but the indictment was sufficiently specific because it "adequately specified the period in which the alleged crimes occurred, and set forth enough specificity about the crimes charged to protect against" a subsequent prosecution. 747 F.3d at 196.

> ### a. The official acts alleged in Counts One through Eight and Nineteen through Twenty-One are not vague.

Defendants first contend that the Travel Act and bribery charges in Counts Two through Twelve fail to identify the official acts which were allegedly part of their unlawful *quid pro quo* exchanges. Mot. to Dismiss 7 at 4-9. Defendants contend these Counts provide them with no factual orientation because they each allege that a specifically identified thing of value was given in exchange for Menendez's official actions "as opportunities arose." *Id.* at 5. According to Defendants, they are left without factual orientation as to the nature of the alleged official acts, "the timing of the acts in relation to the alleged bribes," or the opportunities that Defendants allegedly foresaw at the time of the exchange. *Id.* at 5-6. Similarly, Defendants allege that the bribery conspiracy charged in Count One and the honest services fraud charged in Counts Nineteen through Twenty-One "are even more vague than the bribery counts," because "no effort is made to suggest a *quid pro quo* that ties any particular thing of value to any particular official act." *Id.* at 13. This Court has dismissed Counts Nine through Twelve in its opinion on Defendants' motions related to the First Amendment, ECF No. 119, but will address Defendants' arguments with respect to the remaining Counts.

FOR PUBLICATION

Under the stream of benefits doctrine, bribery's "quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor." *United States v. Kemp*, 500 F.3d 257, 282 (3d Cir. 2007) (internal citations and quotations omitted, emphasis in original). "[P]ayments may be made with the intent to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf." *Id.* As discussed earlier, the indictment alleges numerous specific official acts, and the timing of these acts in relation to the alleged bribes is clear from the face of the indictment. Defendants assert that "the incorporation of 157 'acts' into each of ten separate bribery counts . . . only magnifies the insufficiency of the Indictment." Mot. to Dismiss 7 at 11. But these various acts together show a "pattern of official actions" that the government alleges as evidence of the "*quo*" that Defendants intended to result from the alleged bribes. *Kemp*, 500 F.3d at 282. Taking all facts alleged in the indictment as true, as the Court must at this stage, the many official acts alleged in the indictment serve as circumstantial evidence that Melgen's payments were made and accepted with the intent to retain Menendez's services on an as needed basis. This provides more than sufficient factual orientation for the charges of bribery in Counts Two through Eight, the charges of honest services fraud in Counts Nineteen through Twenty-One, and the conspiracy to commit bribery charged in Count One.

### b. The official acts alleged in Counts Thirteen through Eighteen are not vague.

Defendants also challenge the bribery charges in Counts Thirteen through Eighteen for failing to identify the specific "official acts" at issue. Mot. to Dismiss 7 at 14-16. As discussed in the Court's opinion on Defendants' First Amendment motions, ECF No. 119, these Counts allege campaign contributions as the "*quid*" in various alleged *quid pro quo* exchanges and do not rely

FOR PUBLICATION

on the stream of benefits doctrine. Instead, these Counts allege that bribes were given in exchange for "Menendez's advocacy to the State Department on behalf of Melgen in his contract dispute with the Government of the Dominican Republic," Indict. ¶¶ 251, 253, "Menendez's advocacy at the highest levels of CMS and HHS on behalf of Melgen in his Medicare billing dispute," *id.* ¶¶ 255, 257, and "Menendez's advocacy at the highest levels of HHS on behalf of Melgen in his Medicare billing dispute." *Id.* ¶¶ 259, 261.

Defendants maintain that these Counts "still fail to identify the specific 'official acts' that were allegedly part of an unlawful *quid pro quo*" because, according to them, "'advocacy' alone does not constitute an 'official act' within the meaning of the bribery statute." Mot. to Dismiss 7 at 14-15. This contention depends on and repeats the arguments from Defendants' tenth motion to dismiss that the Court rejected earlier. A Senator's advocacy to an Executive Branch agency with regard to a decision before it can constitute an official act, *see Biaggi*, 853 F.2d at 98; *see also Valdes*, 475 F.3d at 1325; these Counts specify the advocacy that was allegedly exchanged for bribes. Counts Thirteen through Eighteen provide sufficient factual orientation and are not unconstitutionally vague.

### 3. Defendants' various additional challenges to Count One fail.

#### a. Defendants' seventh motion to dismiss

Defendants' seventh motion to dismiss also challenges Count One, which alleges conspiracy to commit bribery and honest services wire fraud under 18 U.S.C. § 371, on three further grounds. Defendants first argue that the conspiracy charge is unconstitutionally vague because it fails to describe the agreement. Mot. to Dismiss 7 at 16-23. They also argue that Count One is internally inconsistent because "the Indictment inexplicably claims that Dr. Melgen gave additional things of value, over and over again, to get the exact same thing Senator Menendez

FOR PUBLICATION

had already supposedly agreed to give him." *Id.* at 19. Finally, Defendants argue that the alleged

mail and wire fraud object of the conspiracy is unconstitutionally vague because "none of the

paragraphs setting forth the manner and means of the alleged conspiracy describes any scheme to

use the mail or wire services." *Id.* at 27.

18 U.S.C. § 371 requires the government to prove: "(1) the existence of an agreement to

achieve an unlawful objective; (2) the defendant's knowing and voluntary participation in the

conspiracy; and (3) the commission of an overt act in furtherance of the conspiracy." *United*

*States v. Rigas*, 605 F.3d 194, 206 (3d Cir. 2010) (internal citations omitted). "The agreement

need not be shown to have been explicit." *Iannelli v. United States*, 420 U.S. 770, 777 n.10

(1975). "It can instead be inferred from the facts and circumstances of the case." *Id.*

Defendants do not dispute that the alleged agreement in a conspiracy charge can be

established through circumstantial evidence. Mot. to Dismiss 7 at 23. Instead, they argue that

"the Indictment here does not charge a type of conspiracy whose terms can readily be implied"

and that the indictment's vagueness as to the alleged agreement "makes this case a moving target

for Defendants." *Id.*

The "specificity required for an indictment to have sufficient factual orientation . . . is not

particularly onerous." *John-Baptiste*, 747 F.3d at 196 (internal citations and quotations omitted).

In *United States v. Williams*, the defendant argued that his indictment did "not sufficiently allege

the crime of conspiracy to commit bank fraud because it [did] not specifically allege that there

was an agreement and specific intent to commit bank fraud." 591 F. App'x 78, 87 (3d Cir. 2014).

The Third Circuit rejected this argument and explained that a "conspiracy count only need put

defendants on notice that they are being charged with a conspiracy to commit the underlying

substantive offense." *Id.* at 87-88.

FOR PUBLICATION

Count One alleges that Menendez and Melgen "did knowingly combine, conspire, confederate, and agree with each other" from at least in or about January 2006 through January 2013, in New Jersey and elsewhere, to commit bribery and honest services fraud in order to "use Menendez's official position as a United States Senator to benefit and enrich themselves through bribery." Indict. ¶¶ 9-10. The indictment specifies the manner and means of the conspiracy. *Id.* ¶¶ 11-23. The alleged manner and means include specific allegations about things of value that Melgen gave to Menendez, specific allegations about Menendez's efforts to conceal the conspiracy, and specific allegations as to Menendez's use of his official position to act on behalf of Melgen. *Id.* The indictment then alleges a long list of overt acts taken in "furtherance of the conspiracy, and to accomplish its objects." *Id.* ¶¶ 24-227. These are more than sufficient to allege "(1) the existence of an agreement to achieve an unlawful objective; (2) the defendant's knowing and voluntary participation . . . and (3) the commission of an overt act in furtherance of the conspiracy." *Rigas*, 605 F.3d at 206. Count One does not fail for vagueness.

Defendants also contend that the indictment is inconsistent. They note that Mr. Menendez is alleged to have accepted a bribe in 2010 in exchange for his being influenced "in the performance of official acts, as opportunities arose," and that the indictment then alleges that Melgen continued to give Menendez other bribes "to get the exact same thing Senator Menendez had already supposedly agreed to give him." Mot. to Dismiss 7 at 19. They assert that "such separate agreements would be separate conspiracies, not the single conspiracy charged." *Id.*

This argument fails for multiple reasons. To repeat, under the stream of benefits doctrine bribery's "quid pro quo requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor." *Kemp*, 500 F.3d at 282 (internal citations and quotations

11

FOR PUBLICATION

omitted). That the indictment alleges a stream of benefits given and a pattern of official action is

not inconsistent with the allegation of a single conspiratorial agreement. *See, e.g. United States v.*

*Mariano*, 316 F. App'x 99, 100-102 (3d Cir. 2008) (affirming conviction for honest services

fraud and conspiracy to commit honest services fraud based on a stream of benefits theory).

Second, although Defendants have styled their argument as one attacking vague and

inconsistent charges within the indictment, in truth it is an argument about the plausibility rather

than specificity or sufficiency of the government's allegations. *See* Mot. to Dismiss 7 at 19-21

("[I]f such an agreement was struck based on the initial thing of value given and received, as

alleged in Count 1, there would be no reason for Dr. Melgen to give additional things of value

for the more specific acts described in Counts 13-18."). The plausibility of Melgen continuing to

pay for official acts that Menendez may have already agreed to perform is not decided on a

12(b)(3) motion.

Finally, Defendants assert that the mail and wire fraud object of the conspiracy is

unconstitutionally vague because the manner and means section of the indictment fails to

mention the use of mail or wire services. Mot. to Dismiss 7 at 27-28. The use of both mail and

wire services is specified in Count Twenty-One, but those paragraphs are not incorporated into

the conspiracy charge. Indict. ¶ 264-65. The Third Circuit has held that:

> In a conspiracy indictment, the gist of the offense is the agreement and specific
> intent to commit an unlawful act, and when required by statute, an overt act.
> Conspiracy indictments need not allege all of the elements of the offense which
> the defendants are accused of conspiring to commit. . . . [They] need not allege
> the essential elements of the underlying offense which is the object of the
> conspiracy, a requirement of an indictment charging a substantive offense.

*United States v. Wander*, 601 F.2d 1251, 1259-60 (3d Cir. 1979); *see also United States v.*

*Werme*, 939 F.2d 108, 113 (3d Cir. 1991). The failure of the government to specifically allege

the use of mail or wire services in the "Manner and Means" section of Count One does not

FOR PUBLICATION

render that object unconstitutionally vague because the government was not required to allege that element. Defendants' seventh motion to dismiss is denied with respect to all Counts except Count Twenty-Two, which the Court addressed separately.

### b. Defendants' eleventh motion to dismiss

In a separate motion, Defendants bring three more unsuccessful challenges to Count One. First, Defendants argue that Menendez and Melgen cannot have been guilty of conspiracy to commit bribery because giving a bribe and receiving a bribe are different offenses under 18 U.S.C. § 201. Mot. to Dismiss 11 at 2-4. Second, Defendants assert that the alleged acts of concealment took place after the conspiracy had ended and cannot have been taken in furtherance of the alleged conspiracy. *Id.* at 4-5. Finally, Defendants argue that the Supreme Court's decision in *Hyde v. United States*, 225 U.S. 347 (1912), should be overturned and venue for a conspiracy charge should exist only in the district where the conspiracy was formed. Mot. to Dismiss at 5-6. Defendants concede that this Court cannot overrule a Supreme Court opinion and explain that they make this third argument only to preserve the issue on appeal. *Id.* The Court will address each argument in turn.

Defendants' first argument is meritless. Under 18 U.S.C. § 371, it is an offense for two or more persons to conspire to commit "any offense against the United States" if at least one of those persons takes any act to "effect the object" of the conspiracy. A single conspiracy may have as its object the commission of multiple offenses. *See, e.g.*, *Braverman v. United States*, 317 U.S. 49, 52 (1942); *Rigas*, 605 F.3d at 209 ("what § 371 criminalizes is the unlawful agreement and not the substantive offenses which may be the object of the conspiracy"). "A person . . . may be liable for conspiracy even though he was incapable of committing the substantive offense." *Salinas v. United States*, 522 U.S. 52, 64 (1997).

FOR PUBLICATION

The indictment states that the object of Defendants' conspiracy was to: violate 18 U.S.C. § 201(b)(1)(A) as alleged in paragraph 9(a), violate 18 U.S.C. § 201(b)(2)(A) as alleged in paragraph 9(b), and violate 18 U.S.C. §§ 1341, 1343, and 1346 as alleged in paragraph 9(c). According to Defendants, the indictment alleges that they "conspired to commit *different* offenses." Mot. to Dismiss 11 at 2 (emphasis in the original). This is true only in the sense that both Defendants are alleged to have conspired with each other to commit *three* different offenses, any of which would be sufficient to satisfy the "offense against the United States" element of 18 U.S.C. § 371. Indict. ¶ 9. Nothing in the indictment can be read to support Defendants' claim that they "did not conspire to commit the *same* crime of either offering a bribe or receiving a bribe." Mot. to Dismiss 11 at 3 (emphasis in the original). They are both alleged to have conspired together to commit *both* bribery crimes. It is irrelevant that Defendant Menendez was incapable of independently violating § 201(b)(1)(A) or that Defendant Melgen was incapable of independently violating § 201(b)(2)(A). *Salinas*, 522 U.S. at 64.

Also meritless is Defendants' second argument. They maintain that "all the acts of concealment . . . came after the alleged things of value had been given and received." Mot. to Dismiss 11 at 4. According to Defendants, Menendez "could not have taken any act of concealment until after the object of the conspiracy was complete, and the gifts already had been received," so the acts of concealment should be struck from the conspiracy count. *Id.* Defendants reference three Supreme Court cases which held that acts committed to conceal a conspiracy "after [the objectives charged in the indictment] either had failed or had been achieved" are not acts in furtherance of the conspiracy. *Krulewitch v. United States*, 336 U.S. 440, 442 (1949); *Lutwak v. United States*, 344 U.S. 604, 616-18 (1953); *Grunewald v. United States*, 353 U.S. 391, 405 (1957).

14

FOR PUBLICATION

"It distorts those cases, however, to read them for the broad proposition that no acts of concealment can be in furtherance of a conspiracy." *United States v. Pecora*, 798 F.2d 614, 630 (3d Cir. 1986). "[W]here the concealment of the existence of the conspiracy enabled the defendants to continue their illegal . . . scheme . . . it [is] no error to hold that the statements were made in furtherance of the conspiracy." *Id.* at 631. The indictment here includes Menendez's acts of concealment in the "Overt Acts" section, which alleges that these acts were made in "furtherance of the conspiracy, and to accomplish its objects. . . ." Indict. ¶¶ 24, 64-69.

The conspiracy charged in Count One was an ongoing scheme to commit multiple bribery crimes in exchange for a pattern of official action on behalf of Melgen. It allegedly lasted from "at least in or about January 2006 through in or about January 2013." *Id.* ¶ 9. The alleged acts of concealment took place "from 2007 to 2012" on Menendez's financial disclosure forms filed each year during that period. *Id.* ¶¶ 64-69. Specifically, Melgen is alleged to have given "things of value" to Menendez as late as January 2013, *id.* ¶¶ 27, 45, and Menendez is specifically alleged to have taken official acts on behalf of Melgen as late as January 2013. *Id.* ¶¶ 132-142. It is simply not the case that the alleged acts of concealment took place "after the object of the conspiracy was complete." Mot. to Dismiss 11 at 4. Defendants' second argument is denied.

Finally, Defendants argue that *Hyde* should be overturned and there should be no venue in New Jersey for the conspiracy allegations. Mot. to Dismiss 11 at 6. In a conspiracy case, "venue can be established wherever a co-conspirator has committed an act in furtherance of the conspiracy." *United States v. Perez*, 280 F.3d 318, 329 (3d Cir. 2002) (citing *Hyde*, 225 U.S. at 363); *cf. United States v. Cabrales*, 524 U.S. 1, 3-4, 8 (1998) (Distinguishing case from *Hyde* and holding that venue was improper outside the state where the defendant participated in the

FOR PUBLICATION

crime because "the counts at issue . . . allege no conspiracy."). Defendants refer to Justice

Holmes's dissent in *Hyde*[1] to argue that that case should be overruled and that the Supreme Court

should "hold that venue for a conspiracy charge exists only in the venue in which the agreement

giving rise to the conspiracy was made." Mot. to Dismiss 11 at 6.

      Defendants have mentioned no authority suggesting that *Hyde* is no longer binding law.

For the sake of academic discussion only, Justice Holmes's dissent does not support their

contention that venue for Count One would not exist in New Jersey. In *Hyde*, two defendants

who conspired to obtain land through fraud were tried in Washington, D.C. despite the fact that

they "were in California and never were actually in the District in aid of the conspiracy." 225

U.S. at 384 (Holmes, J., dissenting). Venue was established in D.C. based on overt acts such as

"the entry of appearance by [defendants'] lawyer[,] . . . the filing of papers concerning them, and

letters urging speed." *Id.* Justice Holmes expressed concern that such a case, brought in a district

where "defendants never were members of a conspiracy within a thousand miles," violated the

requirement in Article III, Section 2 of the Constitution that crimes be tried in a district where

they were committed. *Id.* at 386-89. Yet he conceded that the "conspiracy was continuous in

nature. . . . [W]herever it was formed, it might have been continued in the District of Columbia . .

. if the conspirators had met there for the purposes of their scheme." *Id.* at 385. Contrary to

Defendants' assertion, even if *Hyde* were overturned, it would not follow that "venue for a

conspiracy charge [would exist] only in the venue in which the agreement giving rise to the

conspiracy was made," Mot. to Dismiss 11 at 6, because "a defendant who has joined a

---

[1] Defendants also cite to a footnote in Justice Jackson's concurrence in *Krulewitch v. United States* and assert that Justice Jackson "noted that the concerns raised by Justice Holmes were warranted." 336 U.S. 440, 452 n.19 (1949) (Jackson, J., concurring). Justice Jackson did not go so far as to characterize Holmes's concerns as warranted but did note that he "wrote a vigorous protest which did not hesitate to brand the [*Hyde*] doctrine as oppressive and as 'one of the wrongs that our forefathers meant to prevent.'" *Id.*

FOR PUBLICATION

conspiracy continues to violate the law through every moment of the conspiracy's existence."
*Smith v. United States*, 133 S. Ct. 714, 719 (2013) (internal citations and quotations omitted).
Unlike the *Hyde* defendants, both Menendez and Melgen are alleged to have personally made
overt acts in furtherance of the conspiracy in the district where charges were brought, *e.g.* Indict.
¶ 24, 25, 60. So the alleged crime of conspiracy was committed in this District irrespective of the
*Hyde* dissent. Their argument fails.

   **4. Defendants' additional challenges to Count Two fail.**

   Defendants bring additional challenges to Count Two in their twelfth motion to dismiss.
Count Two charges Defendant Menendez with a violation of the Travel Act, 18 U.S.C. § 1952,
that was aided and abetted by Defendant Melgen. Indict. ¶ 229. Specifically, Menendez is
alleged to have traveled from New Jersey to Paris with the intent to "carry on" bribery, after
which he allegedly stayed in a room at the Park Hyatt Paris Vendôme hotel that was corruptly
paid for by Melgen. *Id.* All of the allegations contained in the conspiracy charge are incorporated
into Count Two. *Id.* at ¶ 228. Defendants argue (1) that this charge does not allege criminal
intent, Mot. to Dismiss 12 at 1-2, (2) that the charge does not allege that an act in furtherance of
the underlying offense was taken after the travel, as required by § 1952, *id.* at 2-3, (3) that, even
if a bribe were accepted in Paris, no crime would be committed because, they claim, § 201 does
not apply extraterritorially, *id.* at 3-4, and, (4) inexplicably, that "the Indictment does not contain
a reference to any act by Senator Menendez in exchange for the alleged bribe." *Id.* at 4. Each of
these arguments is meritless.

   Defendants assert that no criminal intent is alleged. Defendants concede that the Count
"charges Dr. Melgen's intent in making the gift" but argue without advancing authority that
"there is no reciprocal language charging any corollary intent that Senator Menendez accepted

FOR PUBLICATION

the hotel room on the understanding that he would be influenced in the performance of his official acts." *Id.* at 2. The indictment alleges that Menendez traveled "with the intent to . . . carry on, and facilitate the . . . carrying on, of an unlawful activity, to wit, bribery, in violation of [§201]," and also that Menendez "corruptly demanded, sought, received, accepted, and agreed to receive and accept" the bribe that Melgen gave "with intent to influence Menendez in the performance of official acts." Indict. ¶ 229. This language is sufficient to charge Menendez with the required intent even in the absence of the incorporation of the conspiracy charge, which further alleges that the Paris hotel was given in furtherance of the conspiracy to commit bribery and to accomplish its objects. *Id.* ¶¶ 24, 28-35.

Next, Defendants claim that the indictment does not allege any action taken after the travel from New Jersey to Paris and does not satisfy § 1952's element that a defendant travels "and thereafter performs" a prohibited act.[2] While the government need not "prove that the defendant committed an illegal act after the travel," it must "prove some conduct after the travel in furtherance of the unlawful activity." *United States v. Zolicoffer*, 869 F.2d 771, 775 (3d Cir. 1989). The government "cannot rely on those acts that are inseparable from the interstate travel itself," such as deplaning or entering an airport terminal. *Id.* at 775, 775 n.2. The indictment alleges that, after traveling to Paris, Menendez corruptly accepted a hotel stay paid for by Melgen in order to influence Menendez's official acts. Indict. at ¶ 229. Menendez allegedly stayed in the hotel for three nights, a stay valued at $4,934.10. *Id.* at ¶ 35.

According to Defendants, the alleged bribe was completed when the hotel was booked, and "the alleged booking gave Senator Menendez the right to use the room, whether he chose to

---

[2] While making this argument, Defendants also dispute that a room paid for with credit card points could constitute a bribe. Mot. to Dismiss 12 at 3. This contention is rejected for reasons expressed in the Court's opinion on Senator Menendez's motions related to Count Twenty-Two.

FOR PUBLICATION

spend time in it or not." Mot. to Dismiss 12 at 3. Notwithstanding that hotel reservations can be cancelled in advance by the person that booked them, the "right to use the hotel room" might itself have been a thing of value to Menendez. The indictment does not allege that Menendez was bribed with the right to use a room. Instead, it alleges that Melgen gave and Menendez received a hotel stay, Indict. at ¶ 229. It follows that the alleged bribe was not "delivered" until Menendez actually stayed at the hotel. *Cf. United States v. Dixon*, 658 F.2d 181, 191 (3d Cir. 1981) ("It has long been established that a defendant charged with aiding and abetting the bribery need not be present at the time of the delivery."). Menendez's alleged acceptance and use of that hotel room in Paris was "some conduct after the travel in furtherance of the unlawful activity" that the indictment has alleged. *Zolicoffer*, 869 F.2d at 775.

Next, Defendants argue that "to the extent the alleged bribe could be viewed as having been accepted in Paris, it would not be a bribe punishable under Section 201 because the alleged crime would not be taking place in the United States." Mot. to Dismiss 12 at 3. Relying on *Kiobel v. Royal Dutch Petroleum Co.*, Defendants contend that no bribe accepted in Paris is punishable under § 201 because the statute does not mention extraterritorial application, and when "a statute gives no clear indication of an extraterritorial application, it has none." 133 S. Ct. 1659, 1664 (2013) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 255 (2010)). The government responds by pointing out that the Supreme Court has not overruled *United States v. Bowman*, which held that the presumption against extraterritoriality does not apply to criminal statutes "enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated, especially if committed by its own citizens, officers, or agents." 260 U.S. 94, 98 (1922); *see also United States v. Campbell*, 798 F. Supp. 2d 293, 296, 299-306 (D.D.C. 2011) (finding that *Morrison* did not overrule *Bowman* and applying the federal funds

19

FOR PUBLICATION

bribery statute, 18 U.S.C. § 666, to an Australian who solicited bribes from a US organization in Afghanistan).

The Court need not reconcile *Bowman* and *Morrison* to decide this issue. The question of whether § 201 as a substantive charge could be violated by conduct in France is not dispositive to Defendants' motion to dismiss Count Two because the Travel Act does not require the government to "prove that the defendant committed an illegal act after the travel." *Zolicoffer*, 869 F.2d at 775. The question before the Court is only whether Menendez's alleged actions in Paris could constitute "*some* conduct after the travel in furtherance of [a violation of § 201]." *Id.* (emphasis added). Menendez's alleged receipt of a hotel stay given to him as a bribe constitutes such conduct.

Defendants' final contention is that, "[e]ven if Senator Menendez had agreed to be influenced 'as opportunities arose,' Count Two does not allege that such opportunities arose or that Senator Menendez acted upon them." Mot. to Dismiss 12 at 4. The Count incorporates the indictment's allegations of a pattern of official conduct taken by Menendez on behalf of Melgen, including lobbying of four departments and agencies of the Executive Branch. "Criminal indictments are to be read 'as a whole and interpret[ed] in a common sense manner.'" *United States v. Lee*, 359 F.3d 194, 209 (3d Cir. 2004) (quoting *Gov't of V.I. v. Moolenaar*, 133 F.3d 246, 250 (3d Cir. 1998)). To repeat, the Travel Act does not require proof that the defendant completed the underlying offense after traveling. Defendants' motion to dismiss Count Two is denied.

### 5. Defendants' additional arguments as to mail and wire fraud fail.

In their twelfth motion to dismiss, Defendants also challenge Counts Nineteen through Twenty-One, which allege mail and wire fraud. Specifically, these allege that Defendants

FOR PUBLICATION

"devised or intended to devise a scheme and artifice to defraud and deprive the United States and the citizens of New Jersey of their right to the honest services of [Menendez] . . . through bribery." Indict. ¶ 263. Counts Nineteen and Twenty allege that Defendants used interstate wires for the purposes of executing the scheme by causing the pilot of Melgen's private jet to transmit signals and sounds to air traffic control in New York while in New Jersey airspace on two occasions. *Id.* Count Twenty-One alleges the use of a private or commercial interstate carrier to execute the scheme by alleging that Melgen's company mailed a $300,000 check that has been alleged as a bribe to Majority PAC via FedEx. *Id.* Defendants argue that these counts fail to plead a mail or wire fraud offense, Mot. to Dismiss 12 at 8-9, and that they do not allege a sufficient connection between the scheme and the use of mail and wire transmissions. *Id.* at 9-10.

   Counts Nineteen through Twenty-One have properly charged mail and wire fraud offenses. "The elements of mail and wire fraud are (1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of the mails or wire transmissions in furtherance of the scheme." *National Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012). The term "scheme or artifice to defraud" encompasses "a scheme or artifice to deprive another of the intangible right of honest services," 18 U.S.C. § 1346, but only to the extent that such a scheme reaches "fraud based on bribes and kickbacks and not based on a failure to disclose a conflict of interest." *United States v. Ciavarella*, 716 F.3d 705, 729 (3d Cir. 2013) (citing *Skilling v. United States*, 561 U.S. 358, 409-412 (2010)). Honest services fraud based on bribery "does not require that each *quid*, or item of value, be linked to a specific *quo*, or official act. Rather, a bribe may come in the form of a 'stream of benefits.'" *United States v. Wright*, 665 F.3d 560, 568 (3d Cir. 2012).

FOR PUBLICATION

Defendants argue first that "no *quid pro quo* agreement is alleged in the honest services fraud counts, and no official act is identified." Mot. to Dismiss 12 at 7. These counts incorporate the indictment's paragraphs 1 through 227 and consequently allege that "Melgen offered and gave, and Menendez solicited and accepted from Melgen [things of value] in exchange for specific requested exercises of Menendez's official authority." Indict. ¶¶ 12, 16. The Court has already discussed the sufficiency of the official acts alleged in the indictment, and this argument fails.

Defendants also argue that these Counts do not "charge that anyone's right to honest services was deprived by inducing Senator Menendez to do anything he would not have otherwise done, or that there was any actual harm to the State." Mot. to Dismiss 12 at 8. As to their first point, the government must allege that Menendez accepted a bribe with the intent to "take favorable official acts that he would not otherwise take," and this intent "may be inferred from circumstantial evidence." *Wright*, at 665 F.3d at 568. By definition, bribery is the giving or receiving of anything of value with the intent to influence an official act or to be influenced in the performance of an official act. *See* 18 U.S.C. § 201. The "influence" element distinguishes a bribe from an illegal gratuity, which is given or received merely "for or because of any official act performed or to be performed." *Id.* That Menendez intended to take acts he would not otherwise have taken is adequately charged by alleging a scheme to defraud the United States of his honest services "through bribery," and paragraphs 70 through 227 allege circumstantial evidence in support of the allegation. As to Defendants' contention that the State must have suffered "actual harm," to require a showing of tangible harm apart from the deprivation of the intangible right to Menendez's honest services would be inconsistent with *Wright*'s explanation

22

FOR PUBLICATION

that the "public official need not even perform the official acts if he stood ready to do so having intended to accept a bribe." *Wright*, 665 F.3d at 568.

Defendants also claim that "there is no allegation of any [material] misstatement or concealment" in the charges. Mot. to Dismiss 12 at 8. Assuming that the government was required to separately allege acts of concealment after having alleged that Defendants engaged in a scheme to deprive the United States of honest services through bribery, the indictment adequately alleges multiple acts of concealment incorporated into the mail and wire fraud counts. Indict. at ¶¶ 17-18, 64-69.

The argument that the alleged transmissions and mailing were not sufficiently connected to the scheme is also meritless. "To bring the defendant's conduct within the statute, it must be proved that the mailings [or transmissions] were sufficiently closely related to the scheme and the scheme's completion depended in some way on the charged mailings [or transmissions]." *United States v. Otto*, 742 F.2d 104, 108 (3d Cir. 1984) (discussing mail fraud) (internal citations and quotations omitted); *see also Pasquantino v. United States*, 544 U.S. 349, 355 n.2 (2005) (wire and mail fraud statutes are construed together where their language is identical, in light of their common purpose). In *Otto*, one count of mail fraud against a defendant who operated a fraudulent scheme was dismissed. 742 F.2d at 105. That count was based on a mailing sent to the defendant, that he had not "directly or impliedly invite[d]," and that "was a threat to the scheme's further continuation" rather than a device "furthering the operation of the scheme." *Id.* at 109. Unlike the mailing in *Otto*, the mailing alleged in Count Twenty-One was essential to the alleged scheme because the check that was mailed was one of the things of value given by Melgen to influence Menendez as part of their bribery agreement. Indict. ¶ 59-60.

FOR PUBLICATION

The wire transmissions alleged in Counts Nineteen and Twenty, although not themselves bribes in the same way that the mailed check was, were incident to flights allegedly given as bribes. *Id.* ¶ 25. "It is sufficient if the [transmissions] are incident to an essential part of the scheme or a step in the plot." *United States v. Coyle*, 63 F.3d 1239, 1244 (3d Cir. 1995) (discussing mail fraud) (internal citations and quotations omitted). The alleged transmissions here were incident to the bribes themselves and are sufficiently connected to the alleged scheme. Defendants claim that it is "not 'self-evident' that there would be particular wire or radio transmissions between flights in New Jersey airspace and an air traffic control tower in New York," Mot. to Dismiss 14 at 10-11, but that is a question of fact. Defendants' twelfth motion to dismiss is denied.

6. **The Court will not order the dismissal of counts for multiplicity at this stage.**

Finally, Defendants argue that the prosecution has charged "identical offenses of bribery" as both bribery and mail or wire fraud. Mot. to Dismiss 14 at 1. They claim that Counts Nineteen, Twenty, and Twenty-One are multiplicitous with Counts Three, Five, and Fifteen, respectively, because the former Counts charge mail or wire fraud based on the same conduct that the latter Counts charge as bribery. *Id.* Defendants move for the Court to order the prosecution to elect which charges to pursue at trial. *Id.* at 4.

"A multiplicitous indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause." *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992). Courts must therefore "determine whether Congress has in a given situation provided that two statutory offenses may be punished cumulatively." *Whalen v. United States*, 445 U.S. 684, 691 (1980). Where Congressional intent is unclear as to whether the same act constitutes two offenses or only one,

24

FOR PUBLICATION

courts look to "the statutory elements of the crime charged to determine if there is any overlap." *United States v. Chorin*, 322 F.3d 274, 281 (3d Cir. 2003) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

      Defendants contend that the mail and wire fraud charges are multiplicitous with the bribery charges because a jury "must find the bribery violations to conclude that mail and wire fraud has been committed 'through bribery.'" Mot. to Dismiss 14 at 3-4. Defendants do not contest that these statutes each contain different elements but instead argue that "when a public official is [charged], the honest services statute requires proof of the elements of § 201 bribery" because the prosecution must necessarily prove that the public official took a bribe with respect to an official act. Reply in Support of Mot. No. 14, ECF No. 107 at 1. "Official act" is a defined term for the purposes of § 201, as is "public official." These terms are not defined by the mail or wire fraud statutes. However, some courts have allowed § 201(a)(3)'s definition of "official act" to be used in jury instructions defining an "official act" for the purposes of honest-services fraud. *E.g.*, *United States v. McDonnell*, 792 F.3d 478, 505-06 (4th Cir. 2015).

      Defendants cite to cases where offenses were multiplicitous as charged even where one statute as written was not necessarily a lesser included offense in the other statute. In *Whalen v. United States*, the Supreme Court held that a conviction for rape was multiplicitous with a felony murder conviction for killing during the commission of a rape. 445 U.S. 684, 690-91 (1980). Although the relevant felony murder statute allowed for convictions based on other crimes, in that particular case proof of rape was necessary to prove felony murder. *Id.* at 694. The Court made clear that "we do not in this case apply the *Blockburger* rule to the facts alleged in a particular indictment. We have simply concluded that . . . Congress intended rape to be considered a lesser offense included within the offense of a killing in the course of rape." *Id.* at

FOR PUBLICATION

694 n. 8. Justice Rehnquist, joined by Chief Justice Burger, dissented, arguing that the majority

was "apply[ing] the [*Blockburger*] test to the indictment in the present case" even though it was

"more natural to apply it to the language as drafted by the legislature" because *Blockburger* is a

test of legislative intent. *Id.* at 711 (Rehnquist, J., dissenting).

Defendants also cite to cases decided after *Whalen*. In *United States v. Kaiser*, the

Eleventh Circuit held that the crime of filing a false tax return was included in the greater offense

of tax evasion by means of filing a false return. 893 F.2d 1300, 1306 (11th Cir. 1990). The

Eleventh Circuit explained that "we are confronted with a case in which the government must

necessarily rely on all of the elements of the offense of false filing in order to establish an

element of the greater offense of tax evasion." *Id.* Finally, Defendants cite to *United States v.

9844 South Titan Court*, where the Tenth Circuit held that a defendant could not be punished by

civil forfeiture after being convicted of drug offenses for the same transaction, 75 F.3d 1470,

1491 (10th Cir. 1996), but was overruled on the ground that civil forfeiture does not constitute

punishment for Double Jeopardy purposes, *United States v. Ursery*, 518 U.S. 267, 278 (1996).

These cases provide some support for Defendants' argument that "[i]n applying

*Blockburger*, courts are not so free to ignore the facts on which prosecutions are based." Reply

Mot. to Dismiss 14 at 2 (quoting *Titan Court*, 75 F.3d at 1490). But the *Whalen* Court explicitly

stated that it was not applying *Blockburger* to the facts of the case, and the Third Circuit has

reiterated after *Whalen* that, when "applying the *Blockburger* test, 'the elements [of each

provision] are compared in the abstract, without looking to the facts of the particular case.'"

*United States v. Xavier*, 2 F.3d 1281, 1291 n.11 (3d. Cir. 1993) (quoting *Gov't of V.I. v. Grant*,

775 F.2d 508, 514 n.8 (3d Cir. 1985)).

FOR PUBLICATION

To rule in favor of Defendants, the Court would have to hold that (1) the *Blockburger* test should be applied because Congress did not clearly intend to authorize cumulative punishments for bribery and honest services fraud, and (2) when comparing the two statutes "in the abstract," honest services fraud through bribery necessarily requires establishing the "public official" and "official act" elements as specifically defined by 18 U.S.C. § 201(a). Defendants cite to no direct authority for either position.

Both of these questions will be rendered moot if the government fails to convict on either or both purportedly multiplicitous counts. "While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting [a defendant] for such multiple offenses in a single prosecution." *Ohio v. Johnson*, 467 U.S. 493, 500 (1984). Defendants refer to cases from other circuits where the prosecution was ordered to elect to dismiss multiplicitous counts before trial. Mot. to Dismiss 14 at 3-4. But courts may also cure potentially multiplicitous counts later. *See United States v. Felder*, 2007 WL 172368 at *1 (E.D. Pa. Jan. 11, 2007) ("[E]ven if the counts here did involve multiplicitous counts . . . the appropriate curative response would be to merge them at the time of sentencing or to dismiss all but one of them prior to sentencing, as opposed to prior to trial.") (citing *United States v. Blyden*, 930 F.2d 323, 328 (3d Cir. 1991)). If there are convictions, this Court will take that approach. To act now would be premature. Defendants' motion to order the prosecution to elect to dismiss multiplicitous charges before trial is denied.

## CONCLUSION

Defendants' Motions to Dismiss Ten, Eleven and Twelve are denied. Defendants' motion to order the prosecution to elect dismissal of multiplicitous counts is denied. Defendants' Motion

FOR PUBLICATION

to Dismiss Seven is denied with respect to Counts One through Twenty-One. An appropriate

order follows.

DATE: 8 October

_____

William H. Walls

Senior United States District Court Judge