FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT MENENDEZ and<br>SALOMON MELGEN,<br><br>　　　　　　　　　Defendants. | **OPINION**<br>Cr. No. 15-155 |

**Walls, Senior District Judge**

Defendant Robert Menendez moves to dismiss Count Twenty-Two of the indictment in this criminal case, which charges him with falsifying, concealing, or covering up material facts in financial statements he filed with the Secretary of the United States Senate, on multiple grounds. After oral argument on September 17, 2015, the Court denies this motion.

## PROCEDURAL AND FACTUAL BACKGROUND

On April 1, 2015, Defendants Robert Menendez, who has represented New Jersey in the United States Senate since 2006, and Dr. Salomon Melgen, an ophthalmologist who resides and practices his profession in Florida, were indicted in the District of New Jersey on charges of bribery and related crimes. Indictment, EFC No. 1. The procedural history of this case, starting with its time before the grand jury, has already been discussed in the Court's opinion on Defendants' Speech or Debate Clause-related motions, ECF No. 117, and its findings are incorporated here.

Count Twenty-Two of the indictment charges Senator Menendez with violating 18 U.S.C. §§ 1001(a)(1), (c)(1) by falsifying, concealing, or covering up material facts on annual financial disclosure forms he filed with the Secretary of the Senate for the calendar years 2006,

1

FOR PUBLICATION

2007, 2008, and 2010, as required by the Ethics in Government Act of 1978 ("EIGA"). Specifically, the indictment alleges that Menendez failed to disclose reportable gifts he received from Dr. Melgen in the alleged bribery scheme, including private, chartered, and first-class commercial flights in 2006, 2007, 2008, and 2010, a car service in 2008, and hotel stays in Paris and Punta Cana in 2010. ECF No. 1 ¶¶ 266-72.

On July 20, 2015, Dr. Melgen and Senator Menendez filed fifteen separate motions to dismiss the indictment in whole or in part under Fed. R. Crim. Pr. 12(b)(3). ECF No. 48-61. *See* Def. Summary Chart of Mot. Dismiss, ECF No. 47, for descriptions of each motion to dismiss. On September 28, 2015, the Court denied Senator Menendez's motions to dismiss the indictment on Speech or Debate Clause grounds, ECF No. 117, Dr. Melgen's motion to dismiss and to suppress evidence based on an allegedly illegal search and seizure, ECF No. 121, and Defendants' joint motions to dismiss based on false testimony and prosecutorial misconduct, ECF No. 123, and grand jury bias, ECF No. 125, and granted in part and denied in part Menendez's motions to dismiss on First Amendment grounds. ECF No. 119.

The Court addresses the remaining motions separately. In Motion to Dismiss 13, Senator Menendez argues that Count Twenty-Two of the indictment must be dismissed because (a) the indictment fails to allege sufficient facts to establish venue, (b) the count is time-barred, (c) the count is unconstitutionally duplicitous, (d) the Separation of Powers doctrine bars prosecution of the offense, (e) the Speech or Debate Clause of the U.S. Constitution bars prosecution of the offense, (f) the count fails to allege a crime because some of the gifts identified in the indictment are not "reportable," and (g) the Rulemaking Clause of the U.S. Constitution bars prosecution of the offense. Def. Mot. Dismiss 13, ECF No. 60. In Motion to Dismiss 7, Senator Menendez argues that Count

FOR PUBLICATION

Twenty-Two must be dismissed because it is unconstitutionally vague.[1] Def. Mot. Dismiss 7, ECF No. 54. The Government responded to Senator Menendez's Speech or Debate Clause and Separation of Powers doctrine arguments in a consolidated opposition to all of Defendants' Speech or Debate arguments, Opp. Mot. Dismiss, ECF No. 85 at 36-41, and responded to Menendez's remaining arguments about Count Twenty-Two with another consolidated opposition, Opp. Mot. Dismiss, ECF No. 87 at 35-47, 50-53. Except for the Speech or Debate Clause and Separation of Powers doctrine arguments, which the Court has decided in a separate opinion, ECF No. 117, the Court now addresses all of Defendant Menendez's Count Twenty-Two arguments.

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to move to dismiss an indictment for a failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). An "indictment is sufficient when it (1) contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) allows him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. John-Baptiste*, 747 F.3d 186, 195 (3d Cir. 2014) (internal citations and quotations omitted). For purposes of a motion to dismiss, the Court must accept as true all factual allegations in the indictment. *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). "[C]riminal indictments are to be read as a whole and interpreted in a common sense manner," *United States v. Lee*, 359 F.3d 194, 209 (3d Cir. 2004) (quotations omitted), and dismissal under Rule 12(b)(3)

---

[1] Motion to Dismiss 7 is brought by both Defendants, but only Senator Menendez has standing to challenge Count Twenty-Two because he is the only one charged with the offense. *United States v. Bennett*, 190 F. Supp. 181, 182 (S.D.N.Y. 1958).

FOR PUBLICATION

"may not be predicated upon the insufficiency of the evidence to prove the indictment's

charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000).

## DISCUSSION

As an initial matter, the Court notes that Count Twenty-Two of the indictment charges

Defendant Menendez with making "False Statements" but cites 18 U.S.C. §§ 1001(a)(1), (c)(1)

and alleges that Menendez "knowingly and willfully falsified, concealed, and covered up by a

trick, scheme, and device, material facts in a matter within the jurisdiction of the Legislative

Branch." ECF No. 1 ¶ 271. A separate subsection of 18 U.S.C. § 1001 criminalizes "mak[ing]

any materially false, fictitious, or fraudulent statement or representation," 18 U.S.C. §

1001(a)(2). The elements of this "false statement" offense are different from the elements of the

"concealment of material facts" offense codified at 18 U.S.C. §§ 1001(a)(1) and alleged in the

indictment. *United States v. Curran*, 20 F.3d 560, 566 (3d Cir. 1994). Reading the indictment in

a "common sense manner," *Lee*, 359 F.3d at 209, the Court finds that Count Twenty-Two

charges Menendez with concealment of material facts, not with making false statements, and

considers the sufficiency of the allegations under 18 U.S.C. §§ 1001(a)(1), (c)(1).

The Ethics in Government Act of 1978 ("EIGA") requires members of the Senate to file

annual financial disclosure reports with the Secretary of the Senate. 5 U.S.C. App. 4 §

103(h)(1)(A)(i)(II). Title 18, Section 1001 of the U.S. Code provides criminal penalties for

anyone who, "in any matter within the jurisdiction of the executive, legislative, or judicial branch

of the Government of the United States, knowingly and willfully falsifies, conceals, or covers up

by any trick, scheme, or device a material fact." 18 U.S.C. § 1001(a)(1). This statute applies to "a

document required by law, rule, or regulation to be submitted to the Congress or any office or

FOR PUBLICATION

officer within the legislative branch," 18 U.S.C. § 1001(c)(1). Defendants do not dispute that

EIGA financial disclosure reports are documents covered by this statute.

To establish a violation of 18 U.S.C. § 1001(a)(1), the Government must demonstrate that

the defendant "(1) knowingly and willfully; (2) conceal[ed] and cover[ed] up by trick, scheme or

device; (3) a material fact; (4) in any matter within the jurisdiction of a department or agency of

the United States." *United States v. Rooney*, 37 F.3d 847, 855 (2d Cir. 1994) (quoting *United

States v. Swaim*, 757 F.2d 1530, 1533 (5th Cir. 1985)).

## I.   The indictment alleges sufficient facts to establish venue for Count Twenty-Two.

Senator Menendez first argues that Count Twenty-Two must be dismissed because it does

not properly allege venue in New Jersey. ECF No. 60-1 at 3-10.

"Article III of the Constitution requires that "[t]he Trial of all Crimes . . . shall be held in

the State where the said Crimes shall have been committed." *United States v. Rodriguez-Moreno*,

526 U.S. 275, 278 (1999) (quoting U.S. Const. Art. III, § 2, cl. 3); *see also* Fed. R. Crim. P. 18

("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a

district where the offense was committed"). Section 1001 does not contain a venue provision, but

18 U.S.C. § 3237 states that "any offense against the United States begun in one district and

completed in another, or committed in more than one district, may be inquired of and prosecuted

in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a).

*See United States v. Ringer*, 300 F.3d 788, 790-91 (7th Cir. 2002); *United States v. Wiles*, 102

F.3d 1043, 1064 (10th Cir. 1996) *vacated on other grounds by United States v. Schleibaum*, 522

U.S. 945 (1997); *United States v. Simon*, 510 F. Supp. 232, 238 (E.D. Pa. 1981) (applying 18

U.S.C. § 3237 venue provision to § 1001 venue analysis). To determine where an offense was

FOR PUBLICATION

committed, courts look to the "nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703 (1946). The Government has the burden to demonstrate venue by a preponderance of the evidence. *Perez,* 280 F.3d at 330.

In an indictment, the government must allege venue "without a facially obvious defect." *United States v. Perez,* 280 F.3d 318, 327 (3d Cir. 2002). Courts have held that, "as long as the indictment alleges venue, a pretrial motion to dismiss based on contrary allegations by the defendant must be denied." *United States v. Stein*, 429 F. Supp. 2d 633, 643 (S.D.N.Y. 2006); *see also United States v. Mendoza*, 108 F.3d 1155, 1156 (9th Cir. 1997) ("[O]nly the indictment may be considered in pretrial motions to dismiss for lack of venue, and . . . the allegations must be taken as true.") (citing *United States v. Jensen,* 93 F.3d 667, 669 (9th Cir. 1996)). "[V]enue must be proper for each count of the indictment." *United States v. Root*, 585 F.3d 145, 155 (3d Cir. 2009) (citing *Perez,* 280 F.3d at 328-30).

At trial, because venue is "a question of procedure, more than anything else, and it does not either prove or disprove the guilt of the accused," *Perez,* 280 F.3d at 330 (quoting *Wilkett v. United States*, 655 F.2d 1007, 1011 (10th Cir. 1981)), the prosecution need only prove venue by a preponderance of the evidence, rather than beyond a reasonable doubt. *Id*. Ordinarily, venue is a question of law for the court to determine. *United States v. Taylor*, 559 F. App'x 122, 126 (3d Cir. 2014) (citing *Perez,* 280 F.3d at 332). If the defendants object to venue and raise a "genuine issue of material fact" before the close of the prosecution's case-in-chief at trial, the Court has discretion to instruct the jury to decide the question. *Id*. at 126-27. If defendants raise a "genuine issue of material fact" and timely request a jury instruction, the court *must* instruct the jury to decide the question. *United States v. Auernheimer*, 748 F.3d 525, 532 (citing *Perez,* 280 F.3d at 334).

6

FOR PUBLICATION

### A. The indictment alleges that venue is proper "in the district of New Jersey and elsewhere."

Facially, the indictment alleges that Senator Menendez committed the offense charged in Count Twenty-Two in New Jersey. Tracking the language of § 1001(a)(1), the indictment alleges that, "[f]rom in or about June 2007 through in or about May 2011, *in the district of New Jersey and elsewhere*, the defendant, Robert Menendez, knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device, material facts in a matter within the jurisdiction of the Legislative Branch." ECF No. 1 ¶ 271 (emphasis added). The indictment charges, "[s]pecifically, in reports he filed from 2007 to 2011, Menendez did not disclose any of the reportable gifts that he received from Melgen." *Id*. Read naturally, the indictment charges Menendez with filing reports "in the district of New Jersey and elsewhere" that did not disclose gifts he had received from Dr. Melgen.

Count Twenty-Two also incorporates the allegations of Count One, which charges Menendez and Melgen with conspiracy to commit bribery and honest services fraud "in the District of New Jersey and elsewhere." *Id*. ¶ 1. The "Manner and Means" section of Count One alleges that:

> Menendez concealed things of value he solicited and accepted from Melgen by knowingly and willfully omitting them from annual Financial Disclosure Reports he was statutorily required to complete under the Ethics in Government Act. Specifically, in reports Menendez filed between 2007 and 2012, he never disclosed any of the reportable gifts that he received from Melgen.

*Id*. ¶ 9, 17. The "Overt Acts" section of Count One, again incorporated into Count Twenty-Two, alleges that Defendant Menendez engaged in "concealment" by filing financial disclosure reports from 2007 to 2012 certifying that he did not receive any reportable gifts in calendar years 2006, 2007, 2008, 2010, and 2011. *Id*. ¶¶ 64-69. Read naturally, the Count One allegations charge

7

FOR PUBLICATION

Senator Menendez with concealing, "in the district of New Jersey and elsewhere," things of value he received from Dr. Melgen by "knowingly and willfully" omitting them from reports he filed between 2007 and 2012.

Multiple courts have held that this language is sufficient to withstand a motion to dismiss an indictment for lack of venue. *See United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1060 (9th Cir. 2000) (holding that an indictment charging defendant with being a deported alien found in the United States properly alleged venue in the Southern District of California because it stated that he was "found" in the Southern District of California and "[o]n its face, therefore. . . alleged proper venue because it alleged facts which, if proven, would have sustained venue in the Southern District of California."); *United States v. Nicolo*, 523 F. Supp. 2d 303, 320 (W.D.N.Y. 2007) *aff'd*, 421 F. App'x 57 (2d Cir. 2011) ("[T]he Government's burden is satisfied with regard to pleading venue by alleging that criminal conduct occurred within the venue, even if phrased broadly and without a specific address or other information.") (citing *United States v. Bellomo*, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003) (indictment alleging that offenses occurred "'within the Eastern District of New York and elsewhere,' suffices to sustain it against this pretrial attack on venue") *and United States v. Szur*, 1998 WL 132942, at *9 (S.D.N.Y. Mar. 20, 1998) ("on its face, the Indictment alleges that the offense occurred 'in the Southern District of New York and elsewhere,' which is sufficient to resist a motion to dismiss")); *Stein*, 429 F. Supp. 2d at 643-44 (in dicta, explaining that indictment's allegation that defendants attempted to evade income tax by preparing and filing tax returns "in the Southern District of New York and elsewhere . . . alone would have been sufficient" to establish venue.).

FOR PUBLICATION

### B. Venue is not restricted to the district where Menendez filed the financial disclosure forms.

Defendant Menendez claims that the indictment's venue allegation is facially invalid because, as a matter of law, venue for this offense can only exist in the District of Columbia. Menendez argues that, "where an omission to act is the crime, the venue is the jurisdictional locality where the act should have been performed." ECF No. 60-1 at 5 (quoting *Anderson*, 328 U.S. at 705 n. 14. In this case, because the EIGA required Menendez to file his financial disclosure reports with the Secretary of the Senate in Washington, D.C., he says that Washington is the only proper venue for the charge. ECF No. 60-1 at 6-7 ("No false statement by omission can become a 'matter within the jurisdiction of the . . . legislative . . . branch of the Government' for purposes of Section 1001 until those forms are filed and received by the Secretary of the Senate") (quoting 18 U.S.C. § 1001(a)). In support, the Defendant offers two cases where defendants filed false non-Communist affidavits with the National Labor Relations Board ("NLRB") in Washington. *See Travis v. United States*, 364 U.S. 631, 636-37 (1961); *United States v. Valenti*, 207 F.2d 242, 245-46 (3d Cir. 1953) (both holding that venue was only proper where affidavits were actually filed, not where they were filled out or mailed).

The Court rejects Defendant's argument for two reasons. First, courts have long declined to extend *Travis* and *Valenti*'s holdings beyond their particular National Labor Relations Act context, where defendants were not required to file *any* statements in the first place and thus could not have made false statements to the NLRB until the organization actually received their affidavits. Where defendants falsify a *mandatory* federal filing, as Menendez is alleged to have done, courts have held that venue is not limited to the district of filing. *See United States v. Clark*, 728 F.3d 622, 625 (7th Cir. 2013) (holding that venue for § 1001(a)(3) prosecution for

9

FOR PUBLICATION

making and using false statements was not limited to place of filing and explaining that "*Travis* is not controlling and is limited to the statute there involved") (quoting *United States v. Ruehrup*, 333 F.2d 641, 643 (7th Cir. 1964)); *United States v. Bilzerian*, 926 F.2d 1285, 1301 (2d Cir. 1991) (in § 1001 prosecution for making false statements by filing false Schedule 13D and 14D-1 forms with SEC, venue was proper in district where forms were prepared and signed, rather than district where they were filed); *United States v. Donahue*, 885 F.2d 45, 51, 51 n.22 (3d Cir. 1989) (limiting both *Travis* and *Valenti* to their particular facts, because, under the statute, "only the single act of having a false statement at a specified place [was] penalized") (quotation omitted); *United States v. Mendel*, 746 F.2d 155, 165 (2d Cir. 1984) (distinguishing *Travis* and holding that, in § 1001 prosecution for making false statements to the U.S. Department of Agriculture, venue was proper in district where false records were prepared rather than only in district where false records were filed); *United States v. Rosen*, 365 F. Supp. 2d 1126, 1132-33 (C.D. Cal. 2005) (in § 1001 prosecution for causing false statements to be made with the Federal Election Commission ("FEC"), holding that, because the defendant's "alleged conduct in causing the false statements to be made occurred, at least in large part, in Los Angeles, it [did] not matter that the report was ultimately filed in Washington, D.C."); *Simon*, 510 F. Supp. at 238 (in § 1001 prosecution for making false statements to Department of Health and Human Services, distinguishing *Travis*, applying § 3237, and finding that venue was proper not only where statements were filed, but where they were made and mailed from).

Additionally, contrary to what Senator Menendez says, he is not charged with a mere "omission to act." Nor is he charged with making a "false statement" to the Secretary of the Senate. Instead, the indictment alleges that Menendez "knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device, material facts." ECF No. 1 ¶ 271.

FOR PUBLICATION

When a defendant is charged with a scheme to conceal material facts, underlying acts taken in furtherance of the scheme may establish venue, even if the concealment is completed in another district. *See United States v. Rigdon*, 874 F.2d 774, 780 (11th Cir. 1989) (in § 1001 prosecution for concealment of material facts from the Internal Revenue Service ("IRS") by using false loan documents to avoid having filing Currency Transaction Reports ("CTRs"), venue was proper in Northern District of Florida, even though defendant argued that CTRs can only be filed in Washington, D.C., because "almost all affirmative acts occurred in the Northern District of Florida," including preparation of false loan documents); *United States v. Hernando Ospina*, 798 F.2d 1570, 1577 (11th Cir. 1986) (in § 1001 prosecution for concealment of material facts from the IRS in money laundering scheme, venue was proper in Southern District of Florida because defendant engaged in "scheme" to conceal there, including collection and exchange of cash for structured checks to avoid CTR filing requirement, even though CTRs were required to be filed in Washington, D.C.); *United States v. Curran*, 1993 WL 137459, at *22 (E.D. Pa. Apr. 28, 1993) *vacated on other grounds*, 20 F.3d 560 (3d Cir. 1994) (in § 1001 and 18 U.S.C. § 2(b) prosecution for conspiracy to conceal material facts from the FEC, venue was proper in district where defendant engaged in a scheme to cause the FEC to make false filings by directing employees to make campaign donations under their own names and then reimbursing them, even though actual FEC filings occurred in Washington, D.C.).

      Here the indictment makes a facially valid allegation that Senator Menendez engaged in a scheme to conceal gifts he received in a bribery conspiracy "in the District of New Jersey and elsewhere." The indictment alleges that he engaged in this scheme by receiving gifts without reporting them, leaving them off of financial disclosure forms, falsely certifying that these forms were complete, and filing the forms with the Secretary of the Senate. ECF No. 1 ¶¶ 64-69, 266-

FOR PUBLICATION

72. It is of no matter that the final act in this scheme occurred in Washington, D.C; the indictment alleges, in language that is sufficient to withstand a motion to dismiss, that Menendez took other acts of concealment in New Jersey.

### C. Whether Menendez filled out and signed his forms in New Jersey is a factual question for the jury.

The Government has met its burden. The indictment's facial allegations of venue are sufficient to withstand this motion to dismiss, and the Court need not consider any other arguments about venue at this stage. However, assuming only for discussion that the Government had not yet met its burden of proof, the Court would consider, in the interest of reveiwing a full factual record, a new exhibit introduced at oral argument on September 17, 2015 that apparently was not previously presented to a grand jury witness or included in the Government's motion papers. The Government presented a daily schedule for May 15-17, 2011, entitled "Report for Senator Robert Menendez," purporting to establish that Senator Menendez was in Newark, New Jersey on May 16, the date he is alleged to have signed and filed the falsified financial disclosure report for calendar year 2010. Gov. Ex. 6; ECF No. 1 ¶ 68. The presentation was made without objection by Defendants. The next day, Defendant Menendez responded by a letter to the Court with a declaration by an employee for the Senator that he, in Washington, D.C., personally delivered the form to the Secretary of the Senate on May 16, 2010. Letter from Abbe David Lowell, Declaration of Robert Kelly, ECF No. 114-1 at 1-2. Although both submissions, that of the Government and that of the Defendant, were made without permission of the Court, in the interest of completeness the Court considers them.[2]

---

[2] Admonition to all parties: such practices are not welcome and may result in the Court's refusal to consider same.

FOR PUBLICATION

To repeat, the act of signing a falsified financial disclosure form in New Jersey would be sufficient to confer jurisdiction in this district. *See Rigdon*, 874 F.2d at 780; *Hernando Ospina*, 798 F.2d at 1577; *Curran*, 1993 WL 137459 at *22; *see also Bilzerian*, 926 F.2d at 1301 (in prosecution for making false statements, venue was proper where forms were signed). Because of the conflicting allegations, whether Menendez actually signed the financial disclosure form in New Jersey is certainly a genuine issue of material fact. The Court has discretion to allow the trial jury to determine this question and *must* do so if Menendez requests such an instruction at trial. *Taylor*, 559 F. App'x at 126; *Auernheimer*, 748 F.3d at 532. Dismissal of Count Twenty-Two for lack of venue, as a matter of law, is not warranted at this stage.

## II. Count Twenty-Two is not time-barred.

Senator Menendez also maintains that Count Twenty-Two must be dismissed because the statute of limitations has run on some of the actions alleged in the indictment. He says his alleged financial disclosure filings in 2007, 2008, and 2009 all occurred outside the limitations period and therefore cannot serve as the basis for a charge. ECF No. 60-1 at 10-11.

Section 1001 is "governed by the five-year statute of limitations generally applicable to the criminal code provisions of Title 18." *United States v. Curran*, 20 F.3d 560, 563 (3d Cir. 1994) (citing 18 U.S.C. § 3282).

The Court has already determined that Senator Menendez is charged with a scheme to conceal material facts, not a "false statement offense," which Defendants argue is "complete once the false statement is made." ECF No. 60-1 at 13-14. Determining the statute of limitations for a scheme to conceal is less straightforward. Some courts have held that, for purposes of the statute of limitations, a § 1001 "scheme to conceal material facts" offense is not a "continuing offense," such that "the statute of limitations [does] not begin running before the statement has

13

FOR PUBLICATION

the potential to deceive and the government could reasonably discover the crime." *United States v. Dunne*, 324 F.3d 1158, 1164 (10th Cir. 2003). Holding that § 1001 is a "continuing offense" would allow prosecutors to charge a scheme to conceal even if all overt acts of concealment occurred more than five years before the indictment was filed. *See United States v. Grenier*, 513 F.3d 632, 639 (6th Cir. 2008) ("To the extent that this argument could be construed as asserting that § 1001 is a continuing offense crime that extends past Defendants' commission of overt acts, the government concedes that this argument has already been foreclosed by controlling precedent"); *Dunne*, 324 F.3d at 164 (§ 1001 scheme is not a continuing offense); *United States v. Mubayyid*, 567 F. Supp. 2d 223, 240-241 (D. Mass. 2008), *aff'd in part, rejected in part on other grounds*, 685 F.3d 35 (rejecting the argument that "scheme" in § 1001(a)(1) "is readily understood as an event that occurs over a period of time, and that therefore Congress must have intended that the crime be treated as a continuing offense" and concluding that "the crime described in § 1001(a)(1) is not a 'continuing offense' for statute of limitations purposes") (internal quotations omitted); *United States v. Gremillion-Stoval*, 397 F. Supp. 2d 798, 802 (M.D. La. 2005) (in § 1001 scheme involving home loan applications, "each alleged application was a completed offense, not merely an act in prolonged time").

However, courts have also held that prosecution for a scheme to conceal that begins outside the limitations period is not time-barred if the defendant commits affirmative acts of concealment in furtherance of the scheme within the limitations period. The rationale of the Court of Appeals for the District of Columbia Circuit in *United States v. Bramblett* is particularly persuasive. 231 F.2d 489, 489-93 (D.C. Cir. 1956). In *Bramblett*, a member of Congress was convicted of engaging in a scheme to conceal material facts under § 1001 by falsely representing to the Disbursing Office of the House of Representatives that he had hired a clerk, in order to

14

FOR PUBLICATION

collect her salary. Though the indictment alleged that the defendant first presented a "Clerk-Hire Allowance form" to the Disbursing Office outside of the statute of limitations period, it also alleged that he continued to falsely represent the clerk's status, on a monthly basis, within the limitations period. *Id.* at 491. The court held that, because "the indictment [did] not merely charge the making of a false statement," but instead charged the defendant with a scheme to conceal, "the period of limitations did not begin to run until the scheme ended," and the prosecution was not time-barred. *Id. See also Grenier*, 513 F.3d at 639 (a "scheme [to conceal] continues until each overt act constituting the scheme has occurred."); *United States v. Hubbell*, 177 F.3d 11, 13-14 (D.C. Cir. 1999) (citing *Bramblett*'s scheme to conceal analysis approvingly in a discussion of vagueness); *United States v. Heacock*, 31 F.3d 249, 256 (5th Cir. 1994) ("[T]he statute of limitations does not begin to run on a 'scheme' crime . . . until each overt act constituting the scheme has occurred, because the case cannot be brought and proved until that time."); *United States v. Mermelstein*, 487 F. Supp. 2d 242, 256 (E.D.N.Y. 2007) (approving Magistrate Judge's report and recommendation citing *Hubbell* and *Heacock* approvingly to hold that, because the "language of [18 U.S.C.] 1035(a)(1) mirrors that of 18 U.S.C. § 1001(a)(1)," prosecution for false statements under § 1035(a) was not time-barred because scheme continued into the limitations period);[3] *United States v. Culoso*, 461 F. Supp. 128, 134 (S.D.N.Y. 1978) (holding prosecution for participation in § 1001 scheme to conceal involving false application to Small Business Administration ("SBA"), drafting of false checks, and presentation of false documents to SBA was not time-barred because "the life of the scheme . . . extended" into the limitations period, and noting that, "[i]f the defendant and his co-conspirators had not taken

---

[3] *Mermelstein* cites *Hubbell* and *Heacock* for the holding that § 1001 is a continuing offense. This appears to be an inaccurate reading of both cases, but the court's factual analysis is still relevant here. *Mermelstein*, like *Heacock*, involved a scheme that began outside the limitations period but continued, through affirmative acts of concealment, into the limitations period.

FOR PUBLICATION

affirmative steps in the conspiracy after the application . . . the statute of limitations would bar prosecution and dismissal would be warranted," but that the charge was not time-barred because defendants "carried on their initial agreement to conceal facts from the government" into the limitations period).

The indictment alleges that Senator Menendez engaged in a scheme to conceal material facts from the Secretary of the Senate in part by affirmatively filing falsified financial disclosure reports on June 26, 2007, April 29, 2008, May 6, 2009, May 16, 2011, and May 9, 2012. ECF No. 1 ¶¶ 64-69. Though the filings allegedly began outside the limitations period, the last two filings occurred less than five years before Menendez was indicted, within the limitations period. The indictment charges these filings as overt acts. *See id.* ¶¶ 65-69, incorporated in Count Twenty-Two. The Court finds *Bramblett*, *Grenier*, and *Heacock* persuasive and holds that, because the last two filings of the scheme occurred within the limitations period, *Heacock*, 31 F.3d at 256, the Count is timely.

A case distinguishing *Heacock* illustrates why this reasoning is appropriate here. In *Gremillion-Stovall*, the Middle District of Louisiana explained that the "*Heacock* court likened the scheme at issue there to a conspiracy," so "the crime was not complete until each overt act constituting the scheme had occurred; i.e., until the scheme was complete." 397 F. Supp. 2d at 801. In *Heacock*, the defendant was charged with engaging in a twelve-year, continuous scheme to conceal a bookmaking operation from the IRS. *Id.* (citing *Heacock*, 31 F.3d at 249). In contrast, the defendant in *Gremillion-Stovall* was charged with concealing material facts from the United States Department of Agriculture by making unrelated applications to the USDA for a home loan, payment subsidies, and food stamps. *Id.* The court held that these individual filings did not "involve the type of 'crime scheme' that was at issue in *Heacock*." *Id.* at 802-03.

16

FOR PUBLICATION

Senator Menendez is charged with a single, ongoing scheme to conceal gifts he received during a conspiracy to commit bribery and honest services wire fraud. The indictment does not just allege that the scheme to conceal was *like* a conspiracy, as in *Heacock*; it alleges that the scheme was *part of an actual conspiracy* – one that continued into 2013. ECF No. 1 ¶¶ 9, 17, 64-69. As charged, all of Senator Menendez's affirmative acts of concealment were part of a single, extended effort to hide the bribery conspiracy, and the scheme did not end, at the earliest, until Menendez filed his last financial disclosure form in 2012. The statute of limitations did not begin to run until then, and all of the allegations in Count Twenty-Two are timely.

### III.   Count Twenty-Two is not unconstitutionally duplicitous.

For this reason, the Court also rejects Senator Menendez's claim that Count Twenty-Two is unconstitutionally duplicitous. "Duplicity is the joining of a single count of two or more distinct and separate offenses." *United States v. Fernandez*, 389 F. App'x 194, 198 (3d Cir. 2010) (quoting *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975)).

Senator Menendez says that the indictment is duplicitous because either (a) each alleged omission in the financial disclosure forms constitutes a separate false statement, or (b) each form constitutes a separate scheme to conceal whichever gift(s) the form doesn't disclose. ECF No. 60-1 at 14-15. A scheme, says Menendez, "can only be one to conceal a *particular* material fact." ECF No. 60-1 at 14 (emphasis added). In either case, Menendez claims that the individual offenses "should be tried separately and cannot be improperly joined in the same charge." *Id*. at 16.

"But this construction of the indictment makes sense only if § 1001 does not state an offense for a scheme crime – which it clearly does." *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999) (rejecting similar argument). To repeat, Count Twenty-Two charges Senator

FOR PUBLICATION

Menendez with a scheme to conceal material facts, not with making individual false statements. And despite Defendant's assertion to the contrary, it is not at all unusual for a single "scheme to conceal" count to allege multiple affirmative acts regarding multiple material facts. *See Mubayyid*, 567 F. Supp. 2d at 246-47 (affirming conviction of defendant for single scheme to conceal based on IRS Form 990 filings containing a falsified answer to the same question in three successive years, "[e]ven if [the Form 990 question] only called for disclosure of activities in the current year"); *Curran*, 1993 WL 137459, at *2 (single scheme to conceal material facts from FEC involved 18 different campaign donations triggering 18 falsified FEC reports, eight different sham contributors, and nine different campaigns over three years). The two cases Menendez cites in support of his argument are inapposite; both involved false statement charges, not schemes to conceal material facts. *See United States v. Dedman*, 527 F.3d 577, 581, 600 n.10 (6th Cir. 2008) (in § 1001(a)(2) case, discussing "schemes," but only to explain that the Sixth Circuit's previous broad reading of § 1001 "meant not that multiple false statements could be alleged in a single count, but that the government could say within the same count that a particular statement was both a false statement and concealment by scheme"); *United States v. Dilworth*, 2011 WL 6179278, at *2-3 (D.N.J. Dec. 12, 2011) (single § 1001(a)(2) charge for making false statements that alleged both a false statement and a separate fraudulent loan agreement was duplicitous).

The indictment charges a single scheme to conceal material facts: it alleges with specificity that Menendez received gifts without reporting them over the course of a conspiracy to commit bribery, then willfully left these gifts out of financial disclosure reports to conceal the conspiracy. ECF No. 1 ¶¶ 17, 64-69, 272. That the indictment alleges multiple affirmative acts of concealment in furtherance of this one scheme does not make it duplicitous.

18

FOR PUBLICATION

### IV.   Count Twenty-Two alleges a crime because the underlying gifts are properly alleged as "reportable."

Senator Menendez also argues that Count Twenty-Two must be dismissed because some of the gifts he allegedly failed to list on his annual financial disclosure reports were not "reportable" gifts required to be disclosed under the EIGA or the Senate Ethics Committee Rules. ECF No. 60 at 29-30.

The gifts alleged in the indictment must be "reportable" under the EIGA for their concealment to qualify as a "matter within the jurisdiction of a department or agency of the United States." *United States v. Rooney*, 37 F.3d at 855. Whether a thing of value constitutes a "reportable gift" is a question of fact for the jury, not for the Court to determine on a motion to dismiss. At this time, the Court need only consider whether the indictment "(1) contains the elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet, and (2) allows him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *John-Baptiste*, 747 F.3d at 195. The Government will need to prove at trial that the concealed gifts in Count Twenty-Two were "reportable." At this stage, the Court must accept as true all factual allegations in the indictment, *Besmajian*, 910 F.2d at 1154, and will not dismiss an indictment based "upon the insufficiency of the evidence to prove the indictment's charges." *DeLaurentis*, 230 F.3d at 661.

The indictment sufficiently alleges that Senator Menendez "did not disclose any of the reportable gifts that he received from Melgen," ECF No. 1 ¶ 271, and specifically that:

> Menendez did not disclose the private, chartered, and first-class commercial flights he received from Melgen and Melgen's companies on his financial disclosure forms covering calendar years 2006, 2007, 2008, and 2010; nor did Menendez report the car service he received from Melgen on his financial disclosure form covering calendar year 2008; nor did Menendez report the Paris and Punta Cana hotel stays he received from Melgen on his financial disclosure

FOR PUBLICATION

> form covering calendar year 2010 – *all of which were reportable gifts over the minimum dollar value threshold.*

*Id.* ¶ 272 (emphasis added). The indictment even gives a general definition of "reportable," explaining that, "[i]n calendar year 2006, reportable gifts were those that aggregated more than $305 and were not otherwise exempt; in calendar years 2007, 2008, and 2010, the minimum reporting threshold was $335." *Id.* ¶ 270.

These allegations are easily sufficient to withstand this motion. Nevertheless, again in the interest of developing a full record, the Court addresses Senator Menendez's specific objections.

### A. The indictment does not charge Senator Menendez with concealing stays at Dr. Melgen's home.

According to the Senator, his stays at Dr. Melgen's home in the Casa de Campo resort in the Dominican Republic are not reportable. ECF No. 60-1 at 31-32. In support, he points to two "exceptions" to the Senate Code of Official Conduct's reportable gift definition: the "personal friendship" exception, which states that gifts with a value of less than $335 "provided on the basis of personal friendship" need not be disclosed, ECF No. 60-1 at 30 (quoting Select Committee on Ethics, U.S. Senate, *Senate Ethics Committee Manual* at (2003 ed.), *available at* http://ethics.senate.gov/downloads/pdffiles/manual.pdf (Senate Rule 34(1)(c)(4)(A))), and the "personal hospitality" exception, which states that "food, lodging, and entertainment provided by an individual, other than a registered lobbyist or agent of a foreign principal, at that person's residence" need not be reported. *Id.* at 30-31 (quoting Senate Rule 34(a)(c)(17) (citing 5 U.S.C. App. § 109(14)).

The Court notes that Senator Menendez is charged with concealing facts he was required to disclose under the EIGA, not the Senate Code of Official Conduct. ECF No. 1 ¶¶ 267. Though Senate Rule 34 ("Public Financial Disclosure") explicitly adopts the provisions of Title I of the

FOR PUBLICATION

EIGA, the two are not the same. The Court considers the indictment's allegations in the context of the EIGA's statutory language and judicial interpretation.

Senator Menendez claims that, because he was staying at the home of a friend, the Casa de Campo stays fall within the "personal hospitality" exception to the definition of "gift" in the Senate Code of Official Conduct. *Id.* Whether Menendez refers to the Senate Code of Official Conduct exception or the EIGA exception, his argument is irrelevant: Menendez is not charged with failing to report these stays.[4] Nor does Menendez argue that the plane flights to and from Casa de Campo are protected by this exception.

### B. The Paris hotel room is adequately charged as reportable.

Senator Menendez claims that the three-night stay at the Park Hyatt Paris-Vendôme he allegedly received from Dr. Melgen, ECF No. 1 ¶¶ 28-35, is not reportable because Melgen paid for the hotel room in American Express Travel Credit points ("AmEx points"), rather than in cash. ECF No. 33-34. Menendez states that he was not required to report the gift because (1) the Senate Rules do not require Senators to report frequent flyer miles they earn on their own, (2) the AmEx points had "no intrinsic value" and therefore did not surpass the dollar threshold for reportable "personal friendship" gifts, and (3) regardless, Menendez "viewed the AmEx points as a loan," not a gift. *Id.*

The indictment does not charge Senator Menendez with accepting AmEx points from Dr. Melgen; it charges him with accepting a three-night stay in a hotel room. Under the EIGA – which is what defines the "material facts" Menendez allegedly concealed, not the Senate Rules – a "gift means a payment, advance, forbearance, rendering, or deposit of money, or any thing of

---

[4] Senator Menendez includes this argument, perhaps, so that he can contest the indictment's charge that his "stays at Casa de Campo were independently improper acts." ECF No. 60-1 at 32. But whether a gift is "reportable" under the EIGA has no bearing on whether acceptance of that gift is an "improper act" of bribery.

FOR PUBLICATION

value, unless consideration of equal or greater value is received by the donor." 5 U.S.C. App. 4 §

109(5). A hotel room stay is certainly a "thing of value," regardless of how Dr. Melgen

originally paid for it. In any event, Senator Menendez gives no case law to support the absurd

proposition that receiving a free hotel room purchased with Dr. Melgen's AmEx points is the

same as earning frequent flyer miles through his own purchases. That the Senate Rules do not

require disclosure of a Senator's own frequent flyer miles has no bearing on the EIGA's

definition of "gift."

The Senator's argument that the hotel room fails to meet the reportable dollar threshold is

also insufficient to dismiss the indictment. The Government will need to prove the actual value

of the hotel stay at trial, but the indictment adequately alleges that, according to an email

confirmation from the hotel, the total value of the three-night stay was $4,934.10, well over the

reportable dollar amount threshold. ECF No. 1 ¶ 11. At trial, Senator Menendez may argue that

the jury should disregard the hotel's estimate because the AmEx points had *no* value at all, ECF

No. 60 at 34, although this argument is undermined by his own admission that he "reimbursed

Dr. Melgen by check on February 15, 2014 for the amount charged in the Indictment." *Id.* at 33

n. 15.

Finally, whether the hotel stay was a loan – another question of fact – is immaterial to the

charge. The EIGA definition of "gift" expressly includes an "advance," 5 U.S.C. App. 4 §

109(5), so the hotel stay would be reportable even if it were a loan.[5] *See United States v. Hansen*,

772 F.2d 940, 950 (D.C. Cir. 1985) (in § 1001 prosecution of U.S. Congressman for failure to

disclose gifts on EIGA-mandated disclosure forms, bank loan to wife cosigned by third party,

loan from third party, and loans from private individuals were all reportable gifts).

---

[5] Senate Rule 35, which Menendez relies on for his argument and which expressly incorporates the EIGA, is even more explicit, holding that the term "gift" includes "any . . . loan." Senate Rule 35(1)(b)(1).

FOR PUBLICATION

### C.  The Punta Cana hotel room is adequately alleged as reportable.

The indictment also alleges that Senator Menendez concealed that, in 2010, he and a

guest stayed "free of charge in a two-bedroom suite with [Dr.] Melgen and his wife at the

Tortuga Bay Hotel Puntacana Resort and Club," and that Melgen paid approximately $769.40 for

the room. ECF No. 1 ¶ 37.

Senator Menendez claims that the hotel stay was not really a gift at all "because the room

was not given to him," but was actually rented by Dr. Melgen. ECF No. 60-1 at 35. As a result,

says Senator Menendez, this was non-reportable "personal hospitality," and the indictment's

allegation is legally insufficient. *Id.* The EIGA's "personal hospitality" exception applies only

when an official stays at the "personal residence" of an individual or on "property or facilities

owned by that individual." 5 U.S.C. App. 4 § 109(15). The Court cannot find any cases deciding

whether a short-term rental shared with an official qualifies as "personal hospitality." But under

a plain reading of the statute, Dr. Melgen's three-night hotel room in Punta Cana is not his

"personal residence." This reading is consistent with interpretations of the term "residence" in

other contexts. *See, e.g., Christensen v. C.I.R.*, 786 F.2d 1382, 1383 (9th Cir. 1986) (noting that,

under the Internal Revenue Code, a dwelling unit is considered a "residence" if a taxpayer "uses

such unit . . . for personal purposes for a number of days which exceeds the greater of (A) 14

days, or (B) 10 percent of the number of days during such a year for which such unit is rented at

a fair rental") (citing 26 U.S.C. § 280A(d)); *United States v. Mankani*, 738 F.2d 538, 544 (2d Cir.

1984) (in Fourth Amendment context, individuals have a diminished expectation of privacy in

hotels because "hotels, as opposed to residences, are truly transitory places" and "are not

ordinarily considered places where one lives").

FOR PUBLICATION

Menendez points to a Senate Interpretative Ruling indicating that, if the "owner or lessee" of a hunting lodge invited a member of the Senate to stay at the lodge for a hunting trip, this stay would fall under the "personal hospitality" exception to Senate Rule 35's definition of "gift." ECF No. 60-1 at 35 (citing Senate Interpretative Ruling No. 76 (Oct 5, 1977), *Senate Ethics Manual* at 209). The Senate's interpretation of its own internal rule is of minimal persuasive authority in the Court's interpretation of a separate federal statute, even if the Senate Rule is modeled on that federal statute.

In any event, Ruling 76 may not be dispositive as Menendez claims; the same ruling holds that, if the host leased the lodge from a prohibited corporation "for this particular hunt," a member of the Senate would be unable to accept because "the legislative history of [Senate] Rule 35 [modeled on 5 U.S.C. App. 4 § 109(15)] . . . indicates that 'personal hospitality' consists of food, lodging, and entertainment while a guest in the host's personal residence." *Id.* Without "intruding into the sphere of influence reserved to the legislative branch under the Constitution" by construing the Senate's internal rules, *United States v. Rostenkowski*, 59 F.3d 1291, 1306 (D.C. Cir. 1995), the Court suggests Ruling 76 may actually indicate that a short-term rental does *not* qualify as a personal residence for purposes of Senate Rule 35's "personal hospitality" exception.

Senator Menendez also proposes that, even if the "personal hospitality" exception does not apply, the stay was not reportable because his "pro rata share" of the hotel cost was below the reporting threshold. ECF No. 60-1 at 35-36. Menendez again relies solely on Senate Ruling 76 to argue that the EIGA requires the reporting value of a shared stay to be calculated on a pro rata basis. Senate Ruling 76 holds that a Senate member could avoid accepting a gift prohibited by the Senate Rules "if he reimburses the proper party . . . for his share of the expenses." *Senate*

FOR PUBLICATION

*Ethics Manual* at 209. The Ruling – which, again, is not binding on this Court – says nothing about reporting thresholds under the EIGA, an entirely separate federal statute. This argument also requires the Court to accept Senator Menendez's contention that his date's stay in the hotel room does not count toward his reportable amount threshold, an argument he again bases solely on a Senate Rule. ECF No. 60-1 at 36 n.17 (citing *Senate Ethics Manual* at 127).

Ultimately, whether the Punta Cana hotel stay meets reporting thresholds is an issue of fact for a trial jury to decide. For now, the indictment sufficiently alleges that the hotel stay was a "reportable gift[ ] over the minimum dollar value threshold." ECF No. 1 ¶ 272.

### D. The flights are adequately alleged as reportable gifts.

Senator Menendez also argues that he cannot be prosecuted for concealing the flights he received from Dr. Melgen in 2006, 2007, 2008 and 2010 because he reimbursed Melgen for some of the flights. Menendez cites the Senate Rule provision that excludes from the definition of gift "[a]nything for which the Member, officer, or employee pays the market value, or does not use and promptly returns to the donor." Senate Rule 35(1)(c)(1)(A). This is modeled after the EIGA definition of "gift" that applies to the charged offense. The EIGA definition of "gift" excludes things of value where "consideration of equal or greater value is received by the donor." 5 U.S.C. App. 4 § 109(5).

The Court need not determine at this stage whether reimbursement for gifts at a later date – or even in a later year – renders them non-reportable. Whether Menendez paid for the flights or received them in exchange for the performance of official acts is a question of fact for trial jurors to decide. For now, the indictment's allegation that these flights were "reportable gifts" over the minimum dollar threshold is sufficient to withstand his motion. ECF No. 1 ¶¶ 25, 271-72.

### V.   The Rulemaking Clause does not render Count Twenty-Two non-justiciable.

FOR PUBLICATION

Senator Menendez claims that Count Twenty-Two of the indictment is non-justiciable because it requires the Court to "construe the Senate's internal rules." ECF No. 60-1 at 36.

Article I, Section 5 of the Constitution states, in part, that "Each House may determine the Rules of its Proceedings." Though "it is perfectly clear that the Rulemaking Clause is not an absolute bar to judicial interpretation of [either House of Congress's] Rules," *Rostenkowski*, 59 F.3d at 1305, courts may refuse to hear a case that requires extensive interpretation of an ambiguous Senate rule on the ground that, "in that circumstance, the court would effectively be making the Rules – a power that the Rulemaking Clause reserves to each House alone." *Id*. at 1306-07.

To say again, the indictment does not charge Senator Menendez with violating a Senate Rule, nor are the material facts he is charged with concealing defined by a Senate Rule. Senator Menendez is charged with failing to disclose facts required by the Ethics in Government Act of 1978, a federal statute within the Court's jurisdiction. ECF No. 1 ¶ 267-272. That Menendez may have also concealed facts required by the Senate Code of Official Conduct is of no matter, even if these facts were the same: that is not the offense charged in the indictment, so there is no need for the Court to engage in any interpretation of Senate Rules.[6]

**VI.   Count Twenty-Two is not unconstitutionally vague.**

Senator Menendez argues in Motion to Dismiss 7 that Count Twenty-Two of the indictment must be dismissed because it is unconstitutionally vague. He claims that Count Twenty-Two (a) fails to identify which specific gifts Menendez failed to report in his financial

---

[6] Senator Menendez states that 5 U.S.C. app. § 106(b)(7) authorizes the Senate Ethics Committee to "render advisory opinions" interpreting the EIGA and protects anyone who "acts in good faith in accordance with the provisions and findings of such advisory opinion" from "any penalty or sanction provided by this title." Count Twenty-Two charges Menendez with concealment of material facts under a separate title, so this defense is inapplicable; and in any event, whether Menendez acted in "good faith" is a question of fact for the jury.

FOR PUBLICATION

disclosure reports, (b) unconstitutionally broadens the list of gifts with the language "including, but not limited to,"  and (c) fails to allege why these gifts were "reportable" under the Senate's financial disclosure rules. ECF No. 54-1 at 30.

### A.  Count Twenty-Two identifies the specific gifts Menendez failed to report.

Senator Menendez claims that the indictment, which charges him with concealing "private, chartered, and first-class commercial flights" he received from Dr. Melgen on his financial disclosure forms, fails to identify the specific flights he failed to report. *Id.* at 30-31 (quoting ECF No. 1 ¶ 272).

A valid indictment may not simply allege the "essential elements of the offense;" it must also allege specific facts that satisfy those elements. *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (citing *United States v. Panarella*, 277 F.3d 678, 682 n.1 (3d Cir. 2002)). An indictment charging a defendant with "criminal falsity" must specify "what statements are alleged to be false, and in what respect they are false." *United States v. Stringer*, 730 F.3d 120, 126-7 (2d Cir. 2013) (citing *United States v. Tonelli*, 577 F.2d 194, 200 (3d Cir. 1978)). One count of the indictment "may incorporate by reference an allegation made in another count." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting Fed. R. Crim. P. 7(c)(1)).

Mr. Menendez argues that the indictment does not identify the false statements he is accused of making. He cites *United States v. Fried*, where the Southern District of New York dismissed sixteen counts of an indictment charging defendants with making false statements on apartment applications under § 1001 because the indictment failed to "state precisely what in the allegedly felonious paper[s] is claimed to [be] false." ECF No. 54-1 at 29 (quoting *United States v. Fried*, 450 F. Supp. 90, 93 (S.D.N.Y. 1978)). The § 1001 counts in *Fried* did not list any specific false statements, but prosecutors argued that each count incorporated by reference a

FOR PUBLICATION

conspiracy charge in the same indictment alleging that the apartment applications contained at least six different misstatements each. *Id.* The court found this insufficient, noting that "different grand jurors could have had different things in mind so that the requisite number never agreed on any one item as being shown to supply probable cause." *Id.*

As an initial note, the *Fried* court left open whether the indictment in that case would sufficiently allege a § 1001(a)(1) "scheme to conceal" offense. *Id.* at 93 n.3. But even assuming that a "scheme to conceal" charge must allege specific affirmative acts of concealment, the indictment here is sufficient to withstand this motion. Count Twenty-Two is more specific than the *Fried* indictment. It incorporates by reference a list of allegedly falsified financial disclosure forms, including the date Menendez filed each form and the actual allegedly false language in each form. ECF No. 1 ¶¶ 64-69 (alleging that Menendez wrote, "I certify that the statements I have made on this form and all attached schedules are true, complete and correct to the best of my knowledge and belief."). Count Twenty-Two also lists the types of gifts Menendez allegedly failed to disclose on the forms each year, including "the private, charted, and first-class commercial flights he received from Melgen and Melgen's companies" during "calendar years 2006, 2007, 2008, and 2010." *Id.* ¶ 272. The count incorporates by reference detailed descriptions of these alleged gifts, including a list of specific "private, chartered, and first-class commercial flights" Senator Menendez received from Dr. Melgen that states the date, starting point, and destination of each flight, the price paid by Melgen for the commercial and chartered flights, and the allegation that "Menendez did not pay for any of these flights at the time he took them." *Id.* ¶¶ 25-26.

Though it is perhaps possible to read Count Twenty-Two as alleging that Menendez was only required to report, or only failed to disclose, *some* of the flights he received from Dr.

FOR PUBLICATION

Melgen, the most natural, reasonable interpretation of the phrase "*the* private, chartered, and first-class commercial flights he received from Melgen," *id.* ¶ 272 (emphasis added), is that Menendez failed to disclose all of the "private, chartered, and first-class commercial flights" incorporated by reference from paragraph 25 during the specified years. *See Lee*, 359 F.3d at 209 ("criminal indictments are to be read as a whole and interpreted in a common sense manner") (quotation omitted). The indictment lists the flights with sufficient specificity to inform Menendez of the charge against him. *Kemp*, 500 F.3d at 280

### B. The "but not limited to" language does not require dismissal of Count Twenty-Two.

Senator Menendez also takes issue with language in Count Twenty-Two stating that the gifts he failed to report were "including, but not limited to" the flights, car service, and hotel stays specifically listed, arguing that this impermissibly broadens the scope of the indictment. ECF No. 54-1 at 39.

Again, an indictment must inform the defendant of the charges alleged against him. Defendants have a "substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Syme*, 276 F.3d 131, 149 (3d Cir. 2002) (quoting *United States v. Miller*, 471 U.S. 130, 140 (1985)).

Courts have held that broadening phrases like "among other things," "in part," and "including, but not limited to" are potentially prejudicial because they could "lead the jury to speculate that [the] defendant was guilty of or responsible for actions in addition to those charged in the indictment," *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989), or "permit the prosecution to go beyond the specific charge of falsity made by the grand jury" when presenting evidence at trial. *United States v. Kassir*, 2009 WL 995139, at *3 (S.D.N.Y. Apr. 9,

29

FOR PUBLICATION

2009) (quoting *United States v. Pope*, 189 F. Supp. 12, 25 (S.D.N.Y. 1960)); *see also United States v. DeFabritus*, 605 F. Supp. 1538, 1547 (S.D.N.Y. 1985); *United States v. Hubbard*, 474 F. Supp. 64, 82 (D.D.C. 1979); *United States v. Brighton Building & Maintenance Co.*, 435 F. Supp. 222, 230 (N.D. Ill. 1977), *aff'd* 598 F.2d 1101 (7th Cir. 1979).

However, courts have approved the use of broadening language in the "means" section of indictments because it "goes only to the matter of proof and does not constitute a basis for asserting that the notice provided in [a charge] is constitutionally defective." *United States v. Haldeman*, 559 F.2d 31, 126 (D.C. Cir. 1976) (citing *United States v. Mayo*, 230 F. Supp. 85, 86 (S.D.N.Y. 1964) (comparing the words "among others" in "means" section to "allegations of overt acts in a conspiracy charge where the government is not required to set forth all the acts relied upon to effectuate the conspiracy")); *see also United States v. Mostafa*, 965 F. Supp. 2d 451, 467 (S.D.N.Y. 2013) (broadening phrases in "sections of the indictment which go to means and methods do not create the same issue"); *Kassir*, 2009 WL 995139 at *3 (citing *Mayo* and holding that "among other things" language is only problematic "if the broadening language appears in a charging paragraph"); *United States v. Caine*, 441 F.2d 454, 456 (2d Cir. 1971) (in dicta, stating that the *Mayo* means distinction was "not without force" with regard to a scheme to defraud charge).

The Court finds the *Mayo* distinction for broadening language in the "means" section persuasive. It is particularly appropriate for Count Twenty-Two, where Senator Menendez is not charged with individual offenses, each of which must be proved, but rather with a single scheme to conceal. *See* Fed. R. Crim. P. 7(c)(1) ("A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means.").

FOR PUBLICATION

In any event, the broadening language is not fatal to the indictment. "[T]he appropriate remedy for counts which contain a prejudicial surplus is a motion to strike the surplusage rather than dismissal of the count in its entirety." *United States v. Ahmad*, 329 F. Supp. 292, 297 (M.D. Pa. 1971) (citing *United States v. Goodman*, 285 F.2d 378 (5th Cir. 1960)); *Mostafa*, 965 F. Supp. 2d at 466 ("As to broadening phrases, surplusage may be struck if it impermissibly expands the charge"). Senator Menendez may still move to strike this and other broadening language in the indictment by arguing that it is "both irrelevant (or immaterial) and prejudicial," *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006), but the Court will not decide this issue until he does so.

### C. Count Twenty-Two explains why the concealed gifts were reportable.

Senator Menendez also claims that "[w]holly absent from the Indictment is any allegation explaining why the things of value at issue qualified as 'reportable gifts' as that term is described in the financial disclosure rules of the Senate." ECF No. 41-1 at 30 n. 10, 31. As explained, Menendez's reference to the Senate's financial disclosure rules is misguided because the indictment charges him with concealing gifts that were reportable under the EIGA. ECF No. 1 ¶ 269. And, as explained, the indictment does allege why these gifts were reportable. The indictment states (a) that "[a]s a United States Senator, Menendez was statutorily mandated to file an annual financial disclosure form by the Ethics in Government Act of 1978," *id.*, (b) that "[t]he financial disclosure form required that Menendez disclose, among other things, 'any reportable gift in the reporting period.' In calendar year 2006, reportable gifts were those that aggregated more than $305 and were not otherwise exempt; in calendar years 2007, 2008, and 2010, the minimum reporting threshold was $335," *id.* ¶ 270, and (c) that the specified, concealed gifts were all "reportable gifts over the minimum dollar value threshold." *Id.* ¶ 272.

FOR PUBLICATION

It is unclear what more Senator Menendez expects the indictment to allege. At trial, the Government will need to prove that each gift exceeds the relevant "dollar value threshold" and does not fall within any reporting requirement exceptions that Menendez raises. At this stage, though, the indictment adequately alleges that Menendez concealed specific gifts he was required to report under the EIGA.

## VII.   Prosecution of Count Twenty-Two is not barred by the Speech or Debate Clause or Separation of Powers Doctrine

As the Court held in its opinion on Senator Menendez's Speech or Debate Clause-related arguments, ECF No. 117, Count Twenty-Two is not barred by the Speech or Debate Clause or Separation of Powers Doctrine. The indictment charges Senator Menendez with violating a federal statute requiring the filing of financial disclosure forms, not an internal Senate rule, and the act of filing such a form with the Secretary of the Senate is not a legislative act protected by the Speech or Debate Clause. *See United States v. Rose*, 280 F.3d 181, 189 (D.C. Cir. 1994) (testimony before House Committee on Standards of Official Conduct about the filing of an EIGA form is not a legislative act). And the Supreme Court has held that the Separation of Powers doctrine does *not* prevent a member of the Senate from being prosecuted for an act that is a crime under federal law simply because it is also a violation of the Senate's internal rules. *See United States v. Brewster*, 408 U.S. 501, 518 (1972).

## CONCLUSION

The Government has met its burden to demonstrate by a preponderance of the evidence that the venue allegation in Count Twenty-Two of the indictment is not facially defective. Defendant Menendez fails to persuade the Court Count Twenty-Two (a) is time-barred, (b) is unconstitutionally duplicitous, (c) fails to allege that he concealed "reportable" gifts, (d) is non-

FOR PUBLICATION

justiciable under the Rulemaking Clause, (e) is unconstitutionally vague, or (f) involves activity

protected by the Speech or Debate Clause or Separation of Powers doctrine. Menendez's Motion

to Dismiss 13 is denied, and Motion to Dismiss 7 is denied with respect to the claims about

Count Twenty-Two. An appropriate order follows.

DATE: 8 October 2015

William H. Walls
Senior United States District Court Judge