UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               v.<br><br>ROBERT MENENDEZ<br><br> and<br><br>SALOMON MELGEN,<br><br>                         Defendants. | Crim. No. 2:15-cr-00155<br>Hon. William H. Walls |

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S MOTION TO QUASH**

Abbe David Lowell
Jenny R. Kramer
Christopher D. Man
Victoria V. Corder
**NORTON ROSE FULBRIGHT US LLP**
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 974-5600

Raymond M. Brown
**GREENBAUM ROWE SMITH & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095
(732) 476-3280

Stephen M. Ryan
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

*Counsel for Defendant*
*Senator Robert Menendez*

Kirk Ogrosky
Murad Hussain
**ARNOLD & PORTER LLP**
555 12th Street, N.W.
Washington, D.C. 20004
(202) 942-5330

Matthew I. Menchel
Samuel A. Stern
**KOBRE & KIM LLP**
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131
(305) 967-6108

*Counsel for Defendant*
*Dr. Salomon Melgen*

## INTRODUCTION

The Court should deny the government's recent attempt to quash[1] six subpoenas which were properly served by Defendants Senator Robert Menendez and Dr. Salomon Melgen on June 28, 2017. The subpoenas are timely, narrowly tailored, and otherwise in compliance with Rule 17(c). These subpoenas seek the production of a narrow subset of highly relevant documents from four federal agencies: the Department of Health and Human Services and related agents (and its subpart, the Centers for Medicare and Medicaid Services), the Department of State, the Department of Commerce, and the Department of Homeland Security (and its subpart, U.S. Customs and Border Protection).[2] In support of its Motion, the government relies upon nothing more than blanket conclusory statements to support the proposition that the subpoenas are overbroad, and makes no attempt to demonstrate how the specific, narrowly tailored requests to federal agencies are either unreasonable or oppressive.

The Motion is a thinly veiled attempt to preclude Defendants from obtaining relevant and specific evidence (1) that is under the exclusive control of a federal agency *or* (2) that should have been—but was not—produced to Defendants as part of the government's Rule 16 production, and that the Sixth Amendment's Compulsory Process right entitles Defendants to

---

[1] The government's motion to quash (Dkt. 187) is referred to herein as the "Motion" or "Mot."

[2] The subpoenas served on June 28, 2017 on the Department of Health and Human Services ("HHS"), the Centers for Medicare and Medicaid Services ("CMS"), the Department of State ("DOS"), the Department of Commerce ("DOC"), the Department of Homeland Security ("DHS"), and U.S. Customs and Border Protection ("CBP") are referred to herein as the "2017 Subpoenas." They are attached to the Motion at Dkts. 187-17 (HHS), 187-14 (CMS), 187-18 (DOS), 187-16 (DOC), 187-15 (DHS), and 187-13 (CBP).

The subpoenas served in 2015, which are also attached to the Motion, are referred to as the "2015 Subpoenas."

obtain. Indeed, the evidence sought in the subpoenas is squarely exculpatory, insofar as it undermines the government's insinuations that Dr. Melgen's legal positions were without merit.

The government cannot have it both ways. In May and June 2015, the Defense made *Brady* demands for numerous categories of documents from the government, including documents from the subpoenaed federal agencies. (*See* Dkts. 45-2; 45-4.) The government responded on June 25, 2015, writing, "[I]f there are still categories of documents or information that you seek and have not yet received, it is because we are not in possession of the material, you are not entitled to it, or we have already produced to you the universe of documents falling within that category." (*See* Dkt. 45-5.) Relying on that representation, and hoping to avoid the need for *Brady* motion practice, the Defense has first sought to proceed through normal subpoena channels. The government has had access to and made use of the agencies' files throughout its investigation and trial preparation, so it cannot now plausibly argue that the Defense is not equally entitled to discovery from those sources.

For these reasons, the Motion should be denied. Alternatively, the Court should reserve ruling on the Motion to allow for the opportunity for Defendants to continue to coordinate with the subpoenaed federal agencies to further narrow their document requests—a process that is already underway.

## PROCEDURAL BACKGROUND

The Motion recounts at length the history of Rule 17 subpoenas served by Defendants in 2015 and discusses the requests sought in the 2015 Subpoenas (Mot. at 2-3), but makes no mention of how this case was effectively on hold pending appeals for nearly a year between 2015 and 2016, and a trial date was not scheduled until Fall 2016. The government has had more than two years to move to quash the subpoenas served in 2015, and chose not to do so until now.

Moreover, the Department of State produced documents responsive to the 2015 subpoena, thus deeming the Motion with respect to that subpoena moot.

In any event, six entirely separate and *different* non-party subpoenas were served in June 2017, more than two months prior to trial, which contain narrower document requests than those contained in the 2015 Subpoenas and target relevant and admissible documentary evidence to use at trial. What is conspicuously absent from the government's Motion is any acknowledgement of the Defendants' active engagement with each subpoenaed agency to further narrow the 2017 Subpoenas, which are not returnable until September 6—the first day of trial. As recently as August 4, Defendants sent a letter to HHS/CMS narrowing the document requests, and are in the process of doing the same with the other agencies. Notably, the August 3 Letter from DHS, attached as Exhibit V to the Motion (Dkt. 187-22), was not received by Defense counsel by mail until *after* the Motion was filed on August 7. It is therefore simply untrue that Defendants are not seeking to work with the agencies. (*See* Mot. at 4.)

## ARGUMENT

### I. The Government Lacks Standing To Move To Quash The Non-Party Subpoenas

As a threshold matter, the government lacks standing to make the Motion. In rejecting Defendants' 2015 demands for exculpatory information, the government represented that it lacks access to these agency materials for *Brady* purposes. Although the Defense does not accept that position, it is nonetheless the government's position—which means that the government cannot now stand in for those agencies in this action. Accordingly, the agencies are non-parties for purposes of Rule 17(c), and they have not joined the instant motion.

The two factors federal courts consider in deciding whether the government has standing to quash a defendant's Rule 17(c) non-party subpoena are: (1) whether the subpoena infringes on

a legitimate government interest, and (2) whether the subpoenaed party joins in the motion to quash. *See United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982); *United States v. Vasquez*, 2589 F.R.D. 68, 71 (E.D.N.Y. 2009); *United States v. Nachamie*, 91 F.Supp.2d 552, 558-59 (S.D.N.Y. 2000). Here, the government argues it has a legitimate interest in preventing irrelevant information from being produced by a federal agency. (*See* Mot. at 1 n.1.) For the reasons set forth below, the information sought is highly relevant, undermining the legitimacy of any theoretical interest the government claims to have. Nor do the 2017 Subpoenas infringe on any other legitimate government interest. Moreover, the subpoenaed parties have not joined in the Motion. As a result, the government lacks standing to bring the Motion in the first instance. *See Nachamie*, 91 F.Supp.2d at 558.

## II. The 2017 Subpoenas Seek Discovery From Non-Parties That Is Relevant, Admissible, And Specific

This Court may quash or modify a subpoena only "if compliance would be unreasonable or oppressive." Fed. R. Crim. 17(c)(2); *United States v. Nixon*, 418 U.S. 683, 698 (1974). Here, compliance would be neither unreasonable nor oppressive, nor does the burden on the producing entity outweigh the evidentiary purpose of the documents sought. (Mot. at 4-8.) To the contrary, the 2017 Subpoenas seek specific, highly relevant materials from non-parties that are material to the defense and admissible at trial. *See United States v. Cuthbertson*, 651 F. 2d 189, 192 (3d Cir. 1981) (adopting the *Nixon* test, 418 U.S. at 700, which requires a party seeking a subpoena to demonstrate "(1) relevancy; (2) admissibility; and (3) specificity"); *United States v. Eisenhart*, 43 F. App'x 500, 505 (3d Cir. 2002) (same); *see also Nachamie*, 91 F. Supp. 2d at 562 (denying government's motion to quash defendant's Rule 17(c) non-party subpoenas where the subpoenas "make specific requests for relevant and admissible documents" in compliance with *Nixon*); *see also United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), *amended* Feb. 20, 2008

(holding that the *Nixon* evidentiary standard should not strictly apply where a defendant, not the government, on the eve of trial issues a Rule 17 subpoena to a non-party and has an "articulable suspicion that documents may be material to his defense").

The 2017 Subpoenas are specific and limited in scope. The subpoenas to HHS and CMS contain only *two* requests seeking very limited categories of documents for the time period of 2008 to 2013 (overlapping with the time frame of events involving HHS and CMS that were charged in the Indictment):

> 1. All Documents concerning HHS or CMS policies or reimbursements for multi-dosing all medicines used to treat eye conditions other than Lucentis.
>
> 2. All Documents concerning HHS or CMS policies or reimbursements for multi-dosing all medicines used to treat conditions other than eye conditions.

(Dkts. 187-17 (HHS); 187-14 (CMS).) Furthermore, on August 4, 2017, one business day prior to the filing of the Motion, Defendants sent a letter to counsel at HHS/CMS to attempt to narrow these limited requests even further by seeking documents concerning the names of specific drugs, specific recipients, or specific Medicare terms of art.

The subpoenas to DOS, DOC, DHS and CBP are also specific and similarly limited in scope. These subpoenas contain only *three* requests seeking limited categories of documents for the time period of 2008 to 2013 (again, overlapping with the time frame of events involving DOS, DOC, DHS and CBP that were charged in the Indictment):

> 1. All Documents, whether classified or not, concerning the security of ports in the Dominican Republic, including but not limited to documents concerning the "100%" Cargo Container Scanning Requirement, the Container Security Initiative, criminal activity/corruption at Dominican Republic ports, and the potential donation of x-ray container scanning equipment to the Government of the Dominican Republic.
>
> 2. All Documents, whether classified or not, concerning the trafficking of illegal drugs/narcotics through ports in the Dominican Republic to the United States, including but not limited to Documents concerning the "Drug Trafficking Organization Assessment" prepared in or around March 2011.

    2.    All Documents, whether classified or not, concerning the corruption within the government of the Dominican Republic, including but not limited to its effect on the Dominican Republic port security, its effect on diplomatic efforts on the part of the United States, drug trafficking to the United States and foreign investment in the Dominican Republic.

(Dkts. 187-18 (DOS); 187-16 (DOC); 187-15 (DHS); and 187-13 (CBP).) Defendants intended to coordinate with DOS, DOC and DHS/CBP to further narrow the requests and address the agencies' responses. In fact, on July 25, 2017, Defense counsel spoke with counsel for DOC to confirm that DOC had received the subpoenas, and informed counsel for DOC that Defense counsel would be back in contact after receiving DOC's response letter, which the DOC had not sent as of that date.

    Moreover, it is without question that the documentary evidence targeted by the 2017 Subpoenas will be highly relevant and admissible at trial. For example, documents demonstrating that there were HHS or CMS policies in place between 2008 and 2013 that permitted Medicare to reimburse physicians who multi-dose medicines other than Lucentis, or that show that multi-dosing in and of itself was not contrary to agency policy, are highly relevant to the defense. Similarly, documents showing that there was pervasive corruption and drug trafficking in the Dominican Republic between 2008 and 2013 would undermine the unsubstantiated theory that Dr. Melgen's contract for port security oversight was singularly fraudulent and provide Senator Menendez an innocent motive for seeking improved cargo inspections in the Dominican Republic. Moreover, because the DOS, DOC and DHS/CBP subpoenas were issued in compliance with each agency's *Touhy* regulations, the subpoenas themselves proffer the relevancy and admissibility of information sought therein. (*See* Dkts. 187-18 (DOS); 187-16 (DOC); 187-15 (DHS); and 187-13 (CBP).)

    The government drastically oversimplifies the elements of the charges in the Indictment to argue that the evidence sought by the 2017 Subpoenas would not be admissible at trial. (*See*

Mot. at 4-7.) The legal issues implicated at trial are multifarious, and Defendants are entitled to utilize Rule 17 to obtain targeted, exculpatory physical evidence in the possession of non-parties that they need to present their defense. This is especially true here where nearly all of the official acts alleged in the indictment concern the very agencies whom Defendants served with subpoenas.

Moreover, the facts that the subpoenas are returnable on September 6—the first day of trial—and were served two months prior to trial, only underscore that the documents sought are intended to be used at trial. *See Tucker*, 249 F.R.D. at 66. For these reasons the Motion should be denied and the 2017 Subpoenas enforced.

**III.   The Defendants' Compulsory Process Rights Are At Stake**

There is no more fundamental part of a Defendant's Sixth Amendment Compulsory Process right to present a defense than the right to compel witnesses to appear and documents be produced. U.S. Const. amend. VI; *Washington v. Texas*, 388 U.S. 14, 19 (1967) (defense subpoenas implicate "the right to present a defense"). That constitutional right is procedurally implemented through Rule 17(c), which authorizes a defendant to subpoena "books, papers, document, or other objects." Fed. R. Crim. 17(c).

Defendants seek the documents sought by the 2017 Subpoenas in order to present their defense, and are equally entitled to obtain the documents sought whether the materials are within the exclusive control of the agencies (as the government represented to Defendants in 2015) or are exculpatory documents turned over to the government that it has failed to produce. For example, although material to Senator Menendez and Dr. Melgen's defense, it is unlikely based on what has been produced to date that the government requested and produced to Defendants *all* evidence from HHS/CMS that Defendants seek—such as evidence that CMS has policies that

permit reimbursement for multi-dosing other drugs or that multi-dosing is not improper in the context of other drugs. The same is true for the evidence sought from DOS, DOC and DHS/CBP. Permitting Defendants to obtain this type of evidence is precisely the purpose of a Rule 17(c). *See United States v. Llanez-Garcia*, 735 F.3d 483, 494 (6th Cir. 2013) ("Because the government does not possess or control all of the materials potentially relevant to a defendant's case, and is not obligated to acquire materials possessed or controlled by others, the criminal-procedure rules do not make the government the gatekeeper to evidence it may not have. Moreover, to the extent the government-as-gatekeeper theory allows the government to obstruct a criminal defendant's access to materials needed for his defense by strategically opting not to obtain them itself, this erroneous legal view risks frustrating the defendant's guarantee of compulsory process under the Sixth Amendment."); *Tucker*, 249 F.R.D. at 66 ("Rule 16 only addresses discovery between the parties, if defendants seek documents from non-parties, it must be pursuant to some other rule. If this were not the case, the government could prevent defendants from obtaining material by choosing not to obtain it for itself. This perverse result cannot be intended by the Federal Rules of Criminal Procedure.").

The government cannot use Rule 16 as a shield and a sword. Defendants are entitled to evidence they seek in the 2017 Subpoenas in order to present their defense to the charged conduct relating to policy issues concerning the federal agencies Defendants served with subpoenas in June 2017.

## IV.   The Government's Motion Is Premature

One business day prior to the filing of the Motion, Defense counsel sent a letter to HHS/CMS to narrow the requests. Defense counsel was also in contact with both DOC and DHS on July 25, 2017 regarding their responses to the subpoenas, which had not been received

as of that date. In fact, Defendants did not receive the August 3, 2017 Letter from DHS until *after* the Motion was filed. Because Defendants are actively engaged in negotiating with each agency to address their concerns and resolve any issues without court intervention, and the 2017 Subpoenas are not returnable until September 6, 2017, the Motion is premature with respect to those subpoenas.

## CONCLUSION

For the foregoing reasons, the Motion should be denied and the subpoenas enforced. Alternatively, the Court should reserve ruling on 2017 Subpoenas until closer to trial.

Respectfully submitted,

/s/ Abbe David Lowell
Abbe David Lowell
Jenny R. Kramer
Christopher D. Man
Victoria V. Corder
**NORTON ROSE FULBRIGHT US LLP**
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
ad.lowell@nortonrosefulbright.com
(202) 974-5600

Raymond M. Brown
**GREENBAUM ROWE SMITH & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095
rbrown@greenbaumlaw.com
(732) 476-3280

Stephen M. Ryan
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, N.W.
Washington, D.C. 20001
sryan@mwe.com
(202) 756-8000

*Counsel for Defendant*
*Senator Robert Menendez*

/s/ Kirk Ogrosky
Kirk Ogrosky
Murad Hussain
**ARNOLD & PORTER LLP**
555 12th Street, N.W.
Washington, D.C. 20004
Kirk.Ogrosky@apks.com
(202) 942-5330

Matthew I. Menchel
Samuel A. Stern
**KOBRE & KIM LLP**
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131
matthew.menchel@kobrekim.com
(305) 967-6108

*Counsel for Defendant*
*Dr. Salomon Melgen*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2017, I electronically filed the foregoing response with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record for all parties.

/s/ Abbe David Lowell

Abbe David Lowell