UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:15-cr-155 |
| v. ) | Hon. William H. Walls |
| ) | |
| ROBERT MENENDEZ and ) | |
| SALOMON MELGEN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## UNITED STATES' REPLY TO DEFENDANTS' OPPOSITION TO THE MOTION TO QUASH

The defendants' response to the motion to quash their overbroad and unduly burdensome subpoenas proves the Government's argument—they are engaging in a generalized fishing expedition designed to uncover documents that could provide a *post hoc* rationale for defendant Menendez's official action on defendant Melgen's behalf. The defendants have had years to narrow their requests and coordinate compliance with the agencies, and they have failed to do so. Now, one week before jury selection, they have yet to make any reasonable requests for relevant documents from the agencies. Their subpoenas should be quashed.[1]

**I.    The United States Has Standing to Move to Quash the Subpoenas.**

The United States has moved to quash subpoenas to which every recipient objected as overbroad and unduly burdensome. *See* Dkt. Nos. 187-19, 187-20, 187-21, 187-22. The United States has standing to move to quash these subpoenas because it "has a legitimate interest in preventing one of its instrumentalities from being compelled to produce voluminous information that is not relevant to an ongoing criminal prosecution." *United States v. Avalos-Martinez,* 299

---

[1] While the United States moved to quash both the 2015 and 2017 subpoenas, Dkt. No. 187, the defendants defend only their 2017 subpoenas, Dkt. No. 191. The 2015 subpoenas have been abandoned.

F.R.D. 539, 541 (W.D. Tex. 2014) (finding that the Department of Justice had standing to quash a subpoena directed at the Government Accountability Office); *see also In re Grand Jury*, 111 F.3d 1066, 1071-72 (3d Cir. 1997) (finding standing to quash a subpoena directed to a third party due to movants' legitimate interest in protecting their own statutory right to privacy); *In re Matter of Grand Jury (Schmidt)*, 619 F.2d 1022, 1026-27 (3d Cir. 1980) (holding that intervenor standing exists regarding a subpoena directed at a third party not only in cases involving intervenors with property interests or claims of privilege, but in cases where "legitimate interests of the party" would be affected); *Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*, No. CIV. 08-5582JHRJS, 2009 WL 2982632, at *2 (D.N.J. Sept. 10, 2009) ("[B]ecause the United States is seeking to protect its property right or privilege, it has standing to object to . . . subpoenas even though they are directed to third persons.").

The agencies have all objected to these subpoenas because compliance would be unreasonable and oppressive. They need not formally join the Government's motion in order for the Government to have standing to move to quash the subpoenas. The cases that the defendants cite for the opposite proposition—all of which are from outside the Third Circuit—impose no such requirement. *See United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (finding that the government had standing to move to quash a trial subpoena for a defense witness, without mentioning whether or not the witness joined the subpoena, because "[a] party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests"); *United States v. Vasquez*, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009) (finding "that the Government ha[d] standing to challenge the subpoena because, at least in part, [the third party] ha[d] joined in their application and the Government ha[d] a legitimate interest" in opposing it, but not imposing a requirement that the third party join the motion); *United States v. Nachamie*,

91 F. Supp. 2d 552, 558-61 (S.D.N.Y. 2000) (finding that the Government lacked standing to move to quash third party subpoenas because it lacked a sufficient legitimate interest in doing so, not because the third parties had not joined the motion; imposing no requirement that the third parties join the motion).

## II.     The Defendants Do Not Seek Exculpatory (or Even Relevant) Material.

As outlined in the Motion to Quash, the subpoenas are breathtakingly overbroad.  *See* Dkt. 187.  That the subpoenas make "only *two* requests" or "only *three* requests" (Dkt. No. 191 at 6) is immaterial—it is the scope of the requests, not the number of requests, that renders them overbroad.  And these broad, burdensome requests do not—cannot, in fact—produce relevant (let alone exculpatory) material *because they would not reflect anything that the defendants knew about at the time they allegedly committed the crimes*.  The objective merits of defendant Menendez's advocacy are irrelevant to his criminal culpability.  If the defendants cannot demonstrate that they already know of specific documents they seek—and, in fact, that they knew of these documents during the criminal conspiracy, and that those documents influenced their intent at that time—then they cannot demonstrate that the documents are relevant to this trial (let alone exculpatory).  Nowhere in the defendants' response do they identify specific documents that satisfy this standard.

In fact, the defendants' assertions of relevance prove the Government's point.  The defendants claim that they need subpoenaed documents that they themselves cannot identify with particularity, have never seen, and may not exist, to "undermine[] the government's insinuations that Dr. Melgen's legal positions were without merit."  Dkt. No. 191 at 3.  They further claim that they need documents to "undermine the unsubstantiated theory that Dr. Melgen's contract for port security oversight was singularly fraudulent" and to "provide Senator Menendez an innocent

3

motive for seeking improved cargo inspections in the Dominican Republic." *Id.* This wording reveals how much the defendants are grasping to find *post hoc* rationalizations for their criminal conduct. They seek documents to "*provide* Senator Menendez an innocent motive," not corroborate his existing intent at the time of the alleged criminal conduct. In other words, the defendants seek to contrive a defense by manufacturing innocent explanations, using documents they have never seen and cannot now identify, for conduct they committed years ago. Their subpoenas are nothing more than a desperate fishing expedition to find something—anything—that could justify the official acts defendant Menendez took on defendant Melgen's behalf other than lavish gifts and campaign contributions. That is not a permissible use of Rule 17(c). *See United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) (quashing a subpoena that sought prior statements of non-witnesses based on the "general assertion that this material might contain exculpatory information," and finding the defendant's request "was based solely on the mere hope that some exculpatory material might turn up").

### III.     The Subpoenas Should be Quashed Now.

Jury selection begins in one week. The defendants have had over two years to make reasonable requests for documents, and they have failed to do so. The defendants note that "conspicuously absent from the government's Motion is any acknowledgement of the Defendants' active engagement with each subpoenaed agency to further narrow the 2017 Subpoenas." Dkt. 191. That is because no such "active engagement" has occurred. The defendants have sent exactly one letter in response to the many agency letters objecting to the 2015 and 2017 subpoenas, and that was sent to HHS weeks after HHS sent its objections to the second subpoena, and years after HHS sent its initial letter objecting to the defendants' initial subpoena. *Compare* Ex. A *with* Dkt. No. 187-20 *and* Dkt. No. 187-10. This letter was received at HHS one business day before the

Government filed its Motion to Quash, and was not conveyed to the Government until after it filed the motion. Notably, rather than resolve any of HHS's concerns about the unduly burdensome nature of the subpoena, the defendants' letter continues to make broad, convoluted requests for documents. *See* Ex. A (requesting, for example, "[a]ll Documents concerning HHS or CMS policies that reflect that a medicine is covered under Medicare Part B for the treatment of an eye condition, but that the purpose or manner of such a medicine's use is not supported by (or is contradicted by) text in an FDA-approved label or labeling (including the manufacturer's instructions) for that medicine"). The agencies received no other communication from the defendants attempting to narrow the subpoenas prior to the filing of the motion to quash.

## IV. Conclusion

The defendants have had years to negotiate with the agencies and make reasonable requests for the documents they now claim to need. The Supreme Court denied the defendants' petition for certiorari on March 20, 2017, *Menendez v. United States*, 137 S.Ct. 1332 (2017), at which point the defendants knew this case would return to this Court for trial, and yet they waited until late June to issue their most recent set of subpoenas. Now they want several federal agencies to scramble to search for potentially tens of thousands of documents, hurrying to comply with subpoenas the defendants issued dilatorily—all to look for documents that can have no possible relevance to the defendants' intent at the time of the alleged criminal conduct. Their subpoenas should be quashed.

                                        ANNALOU TIROL
                                        ACTING CHIEF
                                        PUBLIC INTEGRITY SECTION

                        By:    *s/ Monique Abrishami*
                                        Monique Abrishami
                                        Trial Attorney
                                        Peter Koski

Deputy Chief
J.P. Cooney
Deputy Chief
Amanda Vaughn
Trial Attorney
Public Integrity Section
1400 New York Ave. NW
Washington, D.C. 20005
Telephone:  (202) 514-1412
Facsimile:  (202) 514-3003

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: August 14, 2017        *s/ Monique Abrishami*
                 Monique Abrishami
                 Trial Attorney
                 Public Integrity Section
                 Criminal Division
                 U.S. Department of Justice